**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1205

STATE OF LOUISIANA

VERSUS

DESSERICK CASTILLE

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 03-4230,
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**MICHAEL G. SULLIVAN
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**Earl B. Taylor**
**District Attorney**
**Alisa Ardoin Gothreaux**
**Assistant District Attorney**
**Post Office Drawer 1968**
**Opelousas, Louisiana  70571-1968**
**(337) 948-0551**
**Counsel for:**
        **State of Louisiana**

**W. Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, Louisiana  71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
        **Desserick Castille**

SULLIVAN, Judge.

Desserick Castille was charged with distribution of cocaine, in violation of La.R.S. 40:967. At the close of a one-day trial, a jury found him guilty as charged. The trial court sentenced Defendant to ten years at hard labor. He filed a motion to reconsider sentence, which the trial court heard and denied on July 7, 2005. Defendant appeals his conviction and sentence, assigning three errors. For the following reasons, the conviction and sentence are affirmed.

***Facts***

In September of 2003, Laramie O'Connor approached the Port Barre Police Department with information regarding drug sales in the area. Officers decided to have O'Connor help set up a controlled drug buy with Defendant. They photocopied a twenty-dollar bill, then went to O'Connor's house. They supplied him with the twenty-dollar bill that had been previously copied and a tape recorder. O'Connor did not have phone service, so he called Defendant from a neighbor's house to order a twenty-dollar "rock" of crack cocaine. Within about ten minutes, Defendant pulled into O'Connor's driveway. While officers watched from inside O'Connor's house, Defendant removed a "rock" from his mouth and exchanged it for the twenty-dollar bill that O'Connor had. When Defendant backed out of the driveway, other officers blocked the street and detained him.

Lieutenant Deon Boudreaux searched Defendant's car and found a twenty-dollar bill in the driver's door console. He turned the bill over to Officer Joseph Francis, Jr., who transported Defendant to the police station and recovered a roll of cash from Defendant's pocket. While inventorying the cash, Officer Francis identified the twenty-dollar bill as bearing the same serial numbers as the photocopy.

Subsequent laboratory testing confirmed that the "rock" Defendant sold to O'Connor was cocaine.

### Sufficiency of the Evidence

In his first assignment of error, Defendant argues the evidence adduced against him at trial was insufficient to support his conviction. The analysis for such claims is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* [*v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195 (1979)] standard of review. In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371 (citations omitted).

Defendant first argues that the State failed to prove he was the person who sold cocaine to O'Connor. He claims the State "relied heavily" on O'Connor's testimony to prove identity and that O'Connor's credibility was questionable.

Defendant's attacks on O'Connor's credibility and his identification as the seller of the cocaine are without merit because Lieutenant Boudreaux and Officer Francis each testified that they witnessed the transaction and that it was daylight when the transaction occurred. Further, Defendant was stopped immediately after the transaction.

2

Defendant notes that one of his trial witnesses, Randy Andrus, testified that on the date of the offense, he answered several phone calls from O'Connor on Defendant's cell phone. Defendant was at Andrus's house for "a couple of hours." According to Andrus, Defendant did not take any of O'Connor's calls because he was taking a bath. However, it was clear from the testimonies of O'Connor, Lieutenant Boudreaux, and Officer Francis that O'Connor made a phone call from his neighbors' house, and a few minutes later, Defendant pulled up in his driveway and confected the transaction with him. O'Connor testified that the phone call he made was to Defendant.

Defendant also claims there was a discrepancy in the evidence regarding the recovery of the twenty-dollar bill used in the drug transaction at issue. He argues that Lieutenant Boudreaux's written report of the incident did not include the fact that he recovered the bill at issue from Defendant's car. Further, he urges that Officer Francis's testimony suggested he found the bill in the roll of cash he recovered from Defendant's pocket.

The State clarified this apparent discrepancy through Officer Francis's testimony:

BY MS. CAILLIER-HARDEN:

Q. Let me show you D-2, and in particular draw your attention to the last -- the second to last sentence and then last sentence. Can you read that out loud.

A. While at the police office with Dessrick [sic] Castille, I seized a roll of money which Dessrick[sic] had in his pocket. After I seized the money, I then located the marked twenty-dollar bill that was given to Laramie earlier.

Q. Okay. Now, Mr. Olivier asked you a series of questions and possibly indicated that this statement and your testimony is inconsistent. Is it inconsistent?

3

MR. OLIVIER: Objection, Your Honor; it calls for a conclusion. It's improper --

THE COURT: It does; sustained.

Q. Would you explain to the jury, again, how you retrieved the money off of the person of the defendant?

A. Okay. What happened, at the scene, Lieutenant Boudreaux gave [me] a twenty-dollar bill that he had found out of the -- out of the vehicle. Okay. I kept that twenty-dollar bill. Once we went to the PD -- once I got to the PD with Dessrick [sic] Castille, I then located a roll of -- a roll of money which was in Dessrick's [sic] pocket, not knowing that the twenty-dollar bill that I had was the actually Xeroxed copy of the money. I placed all the money that -- that I had at the time on the -- on the table, went back and got the copy that I actually made from the twenty-dollar bill earlier. All the money on the table, I then located that one twenty-dollar bill. The one twenty-dollar bill on the table, yeah.

Q. So, Officer Francis, from both the money you retrieved and the money you received from Officer Boudreaux combined laid out --

A. -- Yeah.

Q. -- you then retrieved the marked bill from all of the evidence that was obtained?

A. Correct.

Lieutenant Boudreaux affirmed that he seized the twenty-dollar bill from Defendant's car, then turned it over to Officer Francis.

The witnesses identified Defendant beyond a reasonable doubt as the individual who sold a "rock" of crack cocaine to O'Connor in exchange for a twenty-dollar bill. This assignment lacks merit.

### Exclusion of Evidence

In his second assignment of error, Defendant argues that the trial court erred by refusing to allow his witness, Shayla Pickney, to testify regarding statements allegedly made to her by Officer Francis. Ms. Pickney testified that she was Defendant's girlfriend and that she went to the police station on the night of

4

Defendant's arrest. She began to testify regarding statements Officer Francis allegedly made to her, but the State objected, arguing the statements were hearsay; the trial court sustained the objection.

The following colloquy then occurred:

THE COURT:     -- There's no question. Ask your question, Mr. Olivier.

Q.     What was your understanding of why your boyfriend was being held?

A.     On a drug charge.

Q.     Was the name Stien ever brought up to you?

A.     Yes.

Q.     Okay. And what was your understanding regarding -- What, if anything, was desired of your boyfriend regarding Stien?

A.     I don't know -- all I know, his words and, I mean, if I can't tell you --

Q.     What was your understanding by the words you heard? You can tell the court and the jury what your understanding was.

A.     That Dessrick [sic] was being pressured.

Q.     Dessrick [sic] was being pressured to do what?

A.     To give -- It was all because to give up Stien. That was those exact --

Q.     What do you mean by "give up Stien"?

A.     Whatever that was supposed to mean, that was the exact word. "All we need is Dessrick [sic] to be pressured so he could give up Stien," whatever that was supposed to mean.

Another colloquy occurred later in Ms. Pickney's testimony:

THE COURT:     All right; Mr. Olivier, you want to make a proffer?

MR. OLIVIER:     Yes, sir, Your Honor.

5

THE COURT: She said -- I mean, she got it in at the end, she testified, I mean --

MS. CAILLIER-HARDEN: -- She said what he said.

THE COURT: She said what he said. She got it in. There was no objection made, but --

MR. OLIVIER: Okay; I just wanted to make sure for the record, because I was distracted with all the objections. Although I think it would be a prior inconsistent statement even if it's made at trial, it would make it admissible. I'm making the proffer that she would testify that Officer Francis said that the reason that they picked Dessrick [sic] up was to put pressure on him to set up a buy for Stien and, basically, there was nothing for her to worry about, there was no problem as far as Dessrick [sic] having done any wrongful act. That's what she would testify to.

THE COURT: That's your proffer.

MR. OLIVIER: Yes, sir.

THE COURT: If Ms. Pickney, Shayla Pickney, was allowed to testify, except for the objection to the court that was sustained; correct?

MR. OLIVIER: Yes, sir.

The trial court was correct that the information Defendant wanted to adduce through Ms. Pickney's testimony was in fact put before the jury. This assignment lacks merit.

### Excessive Sentence

In his final assignment of error, Defendant argues that his sentence is excessive. As noted earlier, Defendant made a timely oral motion to reconsider sentence, and the trial court denied the motion after a hearing.

The basic analysis for excessive-sentence claims is well-settled:

La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of

6

justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 01-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

Defendant received a ten-year sentence at hard labor. The judge noted at the reconsideration hearing that Defendant faced a possible sentence of thirty years, pursuant to La.R.S. 40:967(B)(4). In his original oral motion, Defendant asked for reconsideration without stating any grounds; however, at the reconsideration hearing he argued possible mitigating factors, as shown in the following colloquy:

My client wanted to express the following to the Court. As the record reflects, he's always been employed. He's always been gainfully employed. He's been trying to take care of his family. His father recently passed away about three months ago, and his father was helping take care of his elderly relatives and that's something that he's indicated that he would like to do.

He realizes, obviously, that the Court has to give him some prison time which the Court has already given him but what he requests is that the Court reconsider the time that has already been given to the gentleman so that he can have some time with his family and help take care of some of his relatives.

He admits that he did some wrong. He's not even denying that but under the circumstances my client felt that the sentence is a little bit excessive, Your Honor.

He also has one child that he'd like to spend some time with in the future.

7

Defendant now argues that in formulating the sentence, the trial court did not adequately consider mitigating factors such as his alleged need to take care of elderly relatives and a young child. Also, he argues that the court should have considered that he is a drug addict and that the crime was not violent.

The trial court noted Defendant's alleged drug addiction on the record at his sentencing but expressed concern about his prior record:

> THE COURT:     Twenty-nine -- who is a third felony offender. On January 31, 2006, the defendant stood charged with the offense of distribution of cocaine and the jury returned a verdict of guilty. The Court notes with more than passing interest that the defendant alleges that he was set up by the Port Barre Police Department because he failed to help them catch other offenders but at the same time the defendant does not deny the charge [of] which he was convicted.
>
> Additionally, the defendant has expressed an interest in Drug Court; however, the Court notes that as a third felony offender, he is not eligible to any type probationary sentence.
>
> The defendant, in the presentence investigation, has admitted to the use of cocaine, marijuana, Loretabs [sic] and formaldehyde since an early age but also claims ceasing use of drugs in 2004.
>
> What concerns this Court is the defendant's prior record and how he handled his punishment. The defendant has a non-specified juvenile record. Additionally, in 1995, defendant was placed on probation for distribution of crack cocaine. On September 28, 1998, the probation was revoked because there was continued criminal activity. On December 4, 1998, the defendant was sentenced to four years at hard labor for possession of cocaine and released on parole on June 20, 2000, which was eventually revoked due to his continued illegal drug use and engaging in criminal activity. In addition, the defendant also has a conviction for possession of marijuana.

The non-violent nature of the crime is not a "mitigating factor" as Defendant argues, and the trial court noted for the record that the crime was not violent.

At the reconsideration hearing, the trial court heard Defendant's claim that he needed to help take care of some relatives but again expressed concerns regarding his record:

Q.     Mr. Castille, this is your second conviction for distribution, correct?

A.     I had a, uh, in '97 I had a distribution. They had dropped the, uh -- I had pled to a possession. They drop[ped] the charge to possession of marijuana. I had pled to that in '97.

THE COURT:     When I get these presentence investigations, I review them and when I have to sentence somebody I take it very seriously, and I look at it closely and sometimes I agonize over it, and I go over and over it. I realize in this particular case, Mr. Castille, what you were charged with was selling one rock of crack cocaine. Certainly, if it would have been your first offense, you would have been given a suspended sentence. Even a second offense the Court would possibly have considered a suspended sentence of some type or possibly a shorter period of jail. However, this is a third conviction and the Court's hands are tied in this matter and the Court sentenced you to ten years looking at that you could have been sentence[d] for a period of up to thirty years. The Court took all of that into consideration and sentenced you to ten years.

The Court has not heard any evidence or any argument of [sic] persuasion in order to change the sentence. The Court maintains its previous sentence.

Defendant's claim that he needed to help care for relatives, including his two-year-old child, was undercut by his admission that he was not supporting the child and that he was not residing with the child or the child's mother at the time of the offense.

Defendant was a repeat offender who received a sentence in the lower range of what he could have received; his sentence does not shock one's sense of justice. This assignment lacks merit.

## Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. There are no errors patent.

### Disposition

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

9

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal. Rule 2-16.3.