# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-252


STATE OF LOUISIANA

VERSUS

ROCH MICHAEL BORDELON


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 149,166A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and James T. Genovese, Judges.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**David Edwin Lafargue**
**Assistant District Attorney, Twelfth Judicial District Court**
**P. O. Box 277**
**Marksville, LA 71351**
**Telephone: (318) 253-7521**
**COUNSEL FOR:**
**Plaintiff/Appellee - State of Louisiana**


**Charles A. Riddle, III**
**District Attorney, Twelfth Judicial District Court**
**P. O. Box 1200**
**Marksville, LA 71351**
**Telephone: (318) 253-6587**
**COUNSEL FOR:**
**Plaintiff/Appellee - State of Louisiana**

**William Gold Whatley**
**555 Laurel Street**
**Marksville, LA 71351**
**Telephone:  (318) 308-7802**
**COUNSEL FOR:**
      **Defendant/Appellant - Roch Michael Bordelon**

**THIBODEAUX, Chief Judge.**

Defendant, Roch Michael Bordelon, was convicted by a jury of the responsive verdict of simple battery after being charged initially with second degree battery. He was a first offender and was sentenced to the maximum time of six months in jail, with credit for eighty-two (82) days spent in jail or inpatient treatment.

He appeals his conviction and sentence. He argues his conviction should be reversed because he was not given a list of the State's witnesses prior to trial. He asserts his sentence is excessive. For the following reasons, we affirm Defendant's conviction but vacate his sentence as excessive and remand to the trial court for resentencing.

## I.

## ISSUES

We shall consider whether:

(1)    the trial court committed legal error when it imposed a maximum sentence for the simple battery conviction—six months imprisonment.

(2)    the trial court committed legal error by refusing to order the state to provide the defense with formal discovery responses.

## II.

## FACTS

Defendant was the girls' basketball coach at Marksville High School ("Marksville") at the time of this incident. On Sunday, January 25, 2009, Marksville's principal, Stephen Allgood, was notified that Defendant was upset at the girls' basketball practice. Allgood then contacted the Avoyelles Parish school superintendent about Defendant. The superintendent told Allgood not to allow

Defendant to return to class until Allgood had interviewed him. Once that interview was complete, Allgood was to send Defendant to the superintendent.

When Allgood arrived at school on Monday, January 26, four parents were waiting to speak to him about Defendant's behavior at the practice. Defendant was not at school at the time, and he had not called in to say he would be absent or late. Allgood and another teacher, Chris Dupuy, went to Defendant's home around 10:00 a.m. and found the door of Defendant's home open. Defendant appeared very agitated but allowed them to enter the home.

Defendant told Dupuy and Allgood he wanted to pick up medication at a pharmacy and to go to church and light a candle. The three left Defendant's home and went to the church, where Defendant became more calm. Dupuy contacted Defendant's father and asked him to meet them at the church. When Defendant saw his father, he again became quite agitated and screamed at his father.

After Defendant calmed down, he told Dupuy and Allgood he had to be at basketball practice that afternoon. When Allgood suggested Defendant should not go to the school that day, Defendant again became very agitated, saying "don't take my girls from me." Defendant cursed at Allgood and then left.

Allgood and Dupuy returned to the school, where Allgood again called the superintendent. Shortly thereafter, Defendant burst into Allgood's office, claiming his girls were in the hallway crying. Defendant then left, slamming the door. Allgood followed him, calling him to stop and talk. Allgood believed Defendant intended to go to practice, although Defendant never walked directly toward a door leading to the gymnasium. He told Defendant he felt he should not be at the school. He wanted to talk with Defendant so that he "could fulfill the directive that [he] had received from [his] superior" and talk about the incident of the prior evening.

2

Allgood had already told the superintendent that he intended to recommend Defendant's termination.

Allgood and Defendant exchanged words, and Allgood eventually told Defendant he was fired. A fight ensued between the two. It is questionable as to who instigated the fight, but Allgood experienced the majority of the injuries. Eventually, the fight concluded. One witness testified that Allgood told Defendant, "you're done" and "you're over." Defendant went to his car following the fight.

Allgood testified he was in "very severe pain" upon his arrival at the hospital, although hospital records showed his pain level as "mild." Since this incident, Allgood testified that he has had back pain and "a real loud ringing in [his] left ear." Moreover, Allgood now wears a mouth splint.

Medical records from the Avoyelles Hospital on the date of the incident indicate that the doctors found no evidence of fracture or alignment abnormalities in Allgood's ribs or spine.

III.

**ERRORS PATENT**

We find one error patent. The record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of this opinion, and to file written proof that Defendant received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

# IV.

## LAW AND DISCUSSION

## (A) EXCESSIVENESS OF SENTENCE

Defendant alleges he received an excessive sentence. This court has set out a standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to

> assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061. Further, "[a]s a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender." *State v. Hall*, 35,151, p. 4 (La.App. 2 Cir. 9/26/01), 796 So.2d 164, 169.

To determine whether the trial court erred in imposing a sentence of six months imprisonment for simple battery, we now examine: (a) the three *Smith* factors; (b) the issues of provocation under La.Code Crim.P. art. 894.1(B)(24); and, (c) the status of the individuals.

**The *Smith* Factors**

*(1) Nature of the Offense*

The nature of the offense is simple battery. Though the State charged the defendant with second degree battery which requires "serious bodily injury" under La.R.S. 14:34.1, the jury obviously believed that the victim did not suffer "serious bodily injury" because it returned a responsive verdict of simple battery. We are cognizant of the victim's testimony concerning the extent of his injuries. The Avoyelles Hospital record of the victim's injuries on the date of the incident, however, indicates injuries that are not as severe as portrayed by the victim. Specifically, the hospital's report shows that the victim suffered no bone fractures and had only mild to moderate degenerative disc disease preexisting the incident. Moreover, though the victim testified that he suffered "very severe pain" upon his arrival at the hospital, the hospital's records rate his pain level as "mild." Thus, we must consider the offense as what the jury found it to be—simple battery.

5

### (2) Circumstances of the Offender

Defendant was a first-time offender. He had never been arrested for a felony, and he had never been convicted of a crime. At the time of the incident, Defendant clearly suffered mental health issues, and his behavior immediately preceding the incident indicates that he was under a tremendous amount of stress and anxiety. Indeed, Defendant later received treatment in a psychiatric facility for which he received credit toward his jail sentence.

Moreover, Defendant received news of his termination shortly before the altercation from the victim who did not have the authority to terminate him. This news undoubtedly added to his stress and altered his demeanor.

### (3) Legislative Purpose and Comparison of Sentences with Similar Crimes

The obvious legislative purpose of the punishment is to deter future conduct. Here, however, nothing in the record indicates that Defendant will commit such crimes in the future. Thus, imposition of the maximum punishment, "makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *State v. Campbell*, 404 So.2d 1205 (La.1981); *State v. Barling*, 779 So.2d at 1042-43.

An examination of sentences for other offenders of simple battery reveals that defendants usually only receive the maximum sentence for simple battery when the offense is combined with other, more serious, crimes.

### Provocation

The trial court should have also considered the issue of provocation under La.Code Crim.P. art. 894.1(B)(24). The record indicates that Allgood was engaged in a heated argument with Defendant immediately before the altercation

began. Specifically, as Defendant attempted to leave the school grounds, the principal pursued Defendant and verbally assaulted him, yelling "you're fired!" Indeed, two students testified that Allgood appeared to be the aggressor and initiated the confrontation. Allgood testified that he reacted only after Defendant spat in his face, but no other witnesses corroborated the principal's testimony. Thus, we find that the trial court should have considered the victim's provocation of Defendant during sentencing.

### Status of the Individuals

The trial court's judgment indicates that it may have impermissibly considered the status of the individuals—teacher and principal—when sentencing Defendant. Here, we must only consider the crime, simple battery, and not the status of the individuals. The fact that the victim and Defendant are educators should not have impacted the harshness of Defendant's sentence. We note specifically that the State failed to charge Defendant with battery of a schoolteacher under La.R.S. 14:34.3, which carries a harsher sentence upon conviction. Thus, the trial court impermissibly considered the individuals' status at sentencing.

An analysis of the *Smith* factors, the victim's provocation, and the status of the individuals leads us to conclude that Defendant's sentence was excessive.

### (B) PRE-TRIAL DISCOVERY

Defendant also contends the trial court erred when it refused to order the State to provide Defendant with requested pre-trial discovery and a list of the State's witnesses with names, addresses, and their last known phone numbers. The record shows the State provided Defendant with its file in discovery. Defendant relies on *State v. Walters*, 408 So.2d 1337 (La.1982), in support of his position. That case, however, specifically recognizes that Defendant has no right to the names and

7

addresses of the State's witnesses, even though Louisiana law does not prohibit him from being given that information. More recently, the Louisiana Supreme Court has confirmed that a defendant is not entitled to the State's witness list, absent extraordinary circumstances. *State v. Weathersby*, 09-2407 (La. 3/12/10), 29 So.3d 499.

Defendant's counsel interviewed a few students at the school, received "statements of quite a few witnesses," and was given the State's file. The State claimed that the names of all of its witnesses could be found in its file, and Defendant failed to show anything different. At the hearing of Defendant's motion for a continuance of the trial on October 14, 2009, the trial judge instructed Defendant's counsel to make a motion during the trial if the State called a witness whose name was not in its file, or of whom Defendant had no knowledge. Defendant made no such motion. Defendant presented no evidence to suggest that anything was withheld from him, that he was in any way prejudiced by not receiving the information he requested, or that the trial court abused its discretion in denying his request for the information. Thus, we find no merit in Defendant's contention that the trial court erred in refusing to order the State to provide Defendant with its witness list.

V.

## CONCLUSION

We affirm Defendant's conviction, but we vacate his sentence. We remand this case to the trial court for resentencing. Moreover, the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**