NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**18-969**

**STATE OF LOUISIANA**

**VERSUS**

**JAMULA L. COLLINS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 16-1799
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Holli Herrle-Castillo**
**Louisiana Appellate Project**
**Post Office Box 2333**
**Marrero, LA 70073**
**(504) 345-2801**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jamula L. Collins**

**J. Reed Walters**
**District Attorney**
**Walter E. Dorroh, Jr.**
**Assistant District Attorney**
**Post Office Box 1940**
**Jena, LA 71342**
**(318) 992-8282**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PERRET, Judge.**

Defendant, Jamula L. Collins, pleaded guilty to second degree battery, a violation of La.R.S. 14:34.1, following an altercation with a fellow inmate at the LaSalle Correctional Center in Urania, Louisiana.  He was sentenced to six years at hard labor with the Department of Corrections, the sentence to run consecutively to any sentences he was currently serving.  Defendant was further ordered to pay the costs of the court proceedings and a fee of $150.00 for the pre-sentence investigation ("PSI") report.  Defendant appeals alleging that his sentence was excessive.  On appeal, we affirm.

**FACTS AND PROCEDURAL HISTORY:**

The facts of the offense were stipulated to at the June 22, 2018 guilty plea hearing as follows:

> THE COURT:  Can I have a factual basis, please?
>
> MR. DORROH:  Yes sir.  On or about September 19, 2016, the defendant and Michael Guillory were inmates at the uh, La Salle Correctional Center in Urania, in La Salle Parish, Louisiana.  On that date uh, the victim, Mr. Guillory, was talking on the telephone, uh, in one of the dorms.  That was in La Salle Parish.  Mr. Collins uh, attacked him from behind.  Knocked him unconscious and proceeded to administer a beating to him.  The victim was unconscious and unable to defend himself.  The beating was so severe that the victim had to be life, uh, airlifted to the hospital.  He was hospitalized for several days.  It was thought that he was going to die at the time.  He still is having problems with uh, memory and brain damage.  He was uh, severely injured and had to be hospitalized.  Was knocked unconscious at the time of the incident.
>
> THE COURT:  Okay.  Mr. Collins, you heard what Mr. Dorroh said.  Is that basically what happened?

A.  Yes sir.

> THE COURT:  Okay.  And he didn't say come hit me.  Did he?  He didn't consent to being hit.

A.  No sir.

On November 15, 2016, Defendant was charged by bill of information with one count of aggravated second degree battery, a violation of La.R.S. 14:34.7, upon Michael Guillory. Defendant initially pled not guilty, but later withdrew that plea and entered a plea of guilty on June 22, 2018, to an amended charge of second degree battery, a violation of La.R.S. 14:34.1, as part of a blind plea deal in which the State agreed not to file a habitual offender bill. The trial court ordered a PSI to be conducted and set sentencing for August 7, 2018.

At the sentencing hearing, Defendant was sentenced to six years at hard labor with the Department of Corrections to run consecutively to any sentences he was currently serving. Defendant was further ordered to pay the costs of the court proceedings and a fee of $150.00 for the PSI report.

Defendant filed a Motion to Reconsider Sentence on August 28, 2018, alleging that his sentence was excessive under the circumstances because the trial court failed to fully consider the mitigating facts that were presented. Additionally, Defendant notes that he is not entitled to diminution of sentence. Defendant requested all exhibits attached to his previously filed sentencing memorandum as well as those attached to the State's sentencing memorandum be proffered into the record for appellate review. The trial court denied Defendant's motion to reconsider.

Defendant now appeals and assigns one assignment of error, that his sentence is excessive.

**ERRORS PATENT:**

All appeals are reviewed for errors patent on the face of the record in accordance with La.Code Crim.P. art. 920. "An error patent is one 'that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.'" *State v. Wagnon*, 18-446, p. 3 (La.App. 3 Cir.

2

12/6/18), 261 So.3d 60, 63 (quoting La.Code Crim.P. art. 920(2)).  After reviewing the record, we find no errors patent.

**ASSIGNMENT OF ERROR:**

In his sole assignment of error, Defendant alleges that the trial court imposed an excessive sentence by declining to consider the mitigating factor that Mr. Guillory's behavior contributed to the attack against him.  We find no merit to Defendant's argument.

We must first determine whether Defendant properly preserved the review of his sentence on appeal, which procedure is set forth in La.Code Crim.P. art. 881.1:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Defendant filed a motion to reconsider sentence on August 28, 2018, and argued:

> Mover[] asserts that the court ordered sentence of six years hard labor is excessive under the circumstances in that the court did not fully consider the mitigating facts presented to the court.  Further the defendant as [sic] indicated in his sentencing memorandum that he is not entitled to diminution of sentence and as such will have to serve day for day on the sentence imposed.
>
> . . . .
>
> Mover further ask [sic] that all exhibits attached to his prior filed sentencing memorandum and the State sentencing memorandum be proffered into the record for appellate review.

3

At the hearing on the motion to reconsider, Defendant's sentencing memorandum was filed into the record. Defendant argued in his memorandum that the court should consider the mitigating factors under La.Code Crim.P. art. 894.1, namely that Defendant did not contemplate that his actions would cause serious harm, that he acted under strong provocation, that there were substantial grounds which could justify Defendant's actions despite failing to establish a defense, and that Mr. Guillory's conduct induced Defendant's actions. Thus, Defendant has properly preserved his claim for appellate review.

Excessive punishment is prohibited under the U.S. Const. amend. VIII and La.Const. art. 1, § 20. Despite a sentence being within the statutory sentencing range, it may be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979).

The supreme court has explained that, "[i]n reviewing a sentence for excessiveness, we first determine whether there has been compliance with LSA-C.Cr.P. Art. 894.1 in the imposition of [the] sentence. If so, a second inquiry is made to determine whether the sentence is too severe given the circumstances of the case and the defendant's background." *State v. Lobato*, 603 So.2d 739, 751 (La.1992). This court has used the following guidelines:

> In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." **To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering.** *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide

4

discretion in the imposition of [a] sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, **in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes.** *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261 (emphasis added).

Additionally, "[w]hile the trial judge need not articulate every aggravating and mitigating circumstance outlined in [La.Code Crim.P.] art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983) (citing *State v. Ray*, 423 So.2d 1116 (La.1982); *State v. Keeney*, 422 So.2d 1144 (La.1982); *State v. Duncan*, 420 So.2d 1105 (La.1982)).

In this case, Defendant pleaded guilty to second degree battery, a violation of La.R.S. 14:34.1(A). In 2016, second degree battery was defined as "a battery

5

when the offender intentionally inflicts serious bodily injury[.]" La.R.S. 14:34.1(A). The penalty provision at the time stated, "Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than eight years, or both." La.R.S. 14:34.1(C). The trial court sentenced Defendant to six years at hard labor, which was ordered to run consecutively to any sentences he was currently serving, as well as costs of the court proceedings and a fee of $150.00 for the PSI report.

The trial court considered the guidelines set forth in La.Code Crim.P. art. 894.1 at the sentencing hearing and noted Defendant's criminal history, which includes a prior felony conviction for manslaughter, the sentence he was serving at the time of the offense in question, and prior juvenile arrests for simple burglary, obstruction of justice, second degree battery, three unnamed misdemeanors, and contempt of court. The trial court asserted that it seemed Defendant's "entire adult life has been spent with a more than comfortable relationship with Louisiana's criminal justice system. This is not a record of a person who simply makes a mistake." The trial court concluded that Defendant had "difficulty operating in normal society without resorting to violence or some other form of criminal activity."

The trial court also considered Defendant's sentencing memorandum, which argued that Defendant's actions were provoked by sexual advances and bullying from Mr. Guillory, and that Defendant had no other recourse to resolve the unwanted advances and bullying. Defendant notes that he was confined in a dormitory and that there was no place for Defendant to go to get away from Mr. Guillory. Defendant states that the problems precipitating the present incident started about three months prior when he, Mr. Guillory, and other inmates in the dorm were playing poker and Mr. Guillory started to lose money. Mr. Guillory

6

started to sneak chips into his pocket then accused Defendant of not giving him enough chips. This caused an argument between Defendant and Mr. Guillory, and Mr. Guillory told Defendant he wanted to fight. Defendant gave Mr. Guillory extra chips to avoid the fight, but he was then perceived as weak. Soon after, Mr. Guillory began antagonizing Defendant by making sexual advances. Defendant alleges that he attempted to talk to Mr. Guillory several times to try to end the advances, but Mr. Guillory did not stop. The last time he tried to talk to Mr. Guillory was the day of the offense at issue. Mr. Guillory was on the phone and winked at Defendant. It was then that Defendant left to put on his shoes, came back, kicked Mr. Guillory, who hit his head against the wall and fell to the ground, and punched Mr. Guillory repeatedly.

On appeal, Defendant argues that there was evidence supporting his claim that Mr. Guillory was a bully, not only to Defendant but to other inmates as well. Defendant points to the statements of four inmates that indicate Mr. Guillory was known to threaten inmates with a knife. Some stated that they had seen the knife. One inmate claimed he had stopped Mr. Guillory from using the knife against another inmate. Another stated he was choked by Mr. Guillory during an altercation. Additionally, the inmates claimed that Mr. Guillory often made sexual advances towards other inmates, which included threats and sexual remarks.

Defendant notes that the inmates' statements also indicate that he, Defendant, was quiet and stayed to himself. Further, Defendant points out that he was at this facility for over a year and was only reprimanded once for arguing with a deputy who refused to let him take a shower.

Defendant refutes the State's assertion that the witness statements were not reliable because they were made by inmates. According to Defendant, the State's allegation that the inmate witnesses are not credible because of their criminal

history is hypocritical when the State is also "portraying Guillory, with just as long a rap sheet, as an angel." Defendant further argues that the statements all corroborate each other and set forth substantially similar claims about Mr. Guillory's conduct which lends credence to their credibility. The State, on the other hand, asserts that the statements lack credibility because the witnesses were not cross-examined, and Mr. Guillory was not available to refute the statements because of the brain injuries he suffered as a result of the attack.

Defendant further claims that the State is incorrect in its suggestion that the presence of only one disciplinary infraction on Mr. Guillory's record at the prison is evidence that he did not engage in the bullying conduct that the inmates claimed he perpetrated. Rather, according to Defendant, the inmates' statements suggest that they were afraid of retaliation should they report Mr. Guillory. One inmate stated he did try to bring Mr. Guillory's behavior to the attention of the prison authorities, but the issue was never pursued.

In Defendant's final argument supporting his claim that Mr. Guillory was a bully, he claims that the failure of fellow inmates to intervene during the attack is evidence that Mr. Guillory did behave in the manner claimed. The State asserts that such an argument is speculation, inuendo, and supposition. Aside from Defendant's statement, the inmates' statements suggest that another inmate did try to stop the attack, but he was advised not to get involved.

Additionally, Defendant claims that the trial court did not consider the journal articles submitted with his sentencing memorandum that describe the realities of prison life. These articles discuss bullying in prison and prison culture. Defendant further explains that prison life does not provide the same outlets as the real world to diffuse potentially violent situations such as the ability to walk away

8

from a confrontation or the ability to report bullying or crimes to authorities without the threat of violent retaliation.

However, the record shows that the trial court did consider these journal articles at sentencing. At the sentencing hearing, the trial court stated:

> I thoroughly reviewed the ten page memorandum and each of the thirteen exhibits. The essence of the memorandum and accompanying statements, journal articles and other attached documents, seem to indicate that you were really the victim here because you were making a preemptive strike upon Mr. Guillory to keep from being bullied. It certainly was not the man that you beat unmercifully to unconsciousness, and was subsequently left with brain damage. You had to attack him to cement your position in the upper echelon of the prison hierarchy to avoid being perceived as weak, making you an easy mark for others to pick on. To your lawyers' credit, he did not try to indicate that you were not guilty, only that your punishment should not be as severe because you were incarcerated. On some level, I understand the argument, and I would not go as far as the assistant district attorney, in his memorandum stated, as classifying the analysis as "psychobabble." However, the argument rings hollow. . . . Nowhere in the articles does it excuse steps taken as retribution. These articles simply describe the conditions in prisons and the environments that allow bullying to prosper, and methods to combat that activity. The fact that this atmosphere exists is not in and of itself a mitigating circumstance.

Thus, not only did the trial court consider the journal articles, but it stated that it understood the argument defense counsel was trying to make and disagreed with the State's characterization of the argument as "psychobabble." The trial court's conclusion that the argument rang hollow is not a total disregard of and failure to consider the journal articles, but rather, it is a valid exercise of the trial court's authority to determine whether the evidence presented by Defendant was enough to support his claim that Mr. Guillory's behavior should mitigate Defendant's sentence.

Given the above, the trial court did properly consider the evidence Defendant provided to mitigate his sentence. However, the trial court rejected his argument, finding that no credible evidence demonstrated Defendant was bullied

by Mr. Guillory, that Defendant's past showed he had a history of violence, and that the fact that an atmosphere of bullying exists in prisons is not in and of itself a mitigating circumstance. According to the trial court, there was no evidence that Mr. Guillory's conduct "induced or facilitated this savage attack" and, importantly, even if Defendant was bullied and such a preemptive attack was necessary for Defendant to protect himself, the attack was not proportional to the bullying Defendant allegedly received. It was within the trial court's authority to find that this evidence did not constitute mitigating circumstances.

We will now address the excessiveness of Defendant's sentence. The factors to consider on appellate review are "the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes." *Soileau*, 153 So.3d at 1005.

### *Nature of the Crime*

Second degree battery requires the intentional infliction of serious bodily injury. La.R.S. 14:34.1. Further, second degree battery is classified as a crime of violence under La.R.S. 14:2. At sentencing, the trial court specifically noted that "the attack [Defendant] perpetrated upon Mr. Guillory was vicious and frankly disturbing. Not only did [Defendant] attack him from the back, but after knocking him to the ground, [Defendant] continued to beat upon him until he was a bloody pulp." The trial court continued, "the extent to which [Defendant] delivered the beating was savage and beyond the pale of anything acceptable by the law." The trial court noted the following regarding Mr. Guillory's injuries at the time of the sentencing hearing:

> Mr. Guillory has been diagnosed with Paranoid Schizophrenia due to his extensive brain damage suffered as a result of this attack. He further has difficulty walking, but can use a wheel chair for balance for only a short distance. He will be in need of further treatment for at least an additional six months.

10

After reviewing the video of the attack, the pictures of Mr. Guillory, and the sentencing memorandums, the trial court concluded that "one cannot realistically state with a straight face that [Defendant] did not contemplate serious harm to Mr. Guillory in this attack."

*Background of the Offender*

The trial court ordered a PSI and referenced it and Defendant's background at length during the sentencing hearing:

> The Pre-Sentence Investigative Report provides that you are a thirty-four year old male and are a second time felony offender. However, that one previous felony is a serious crime of violence. According to this report, you were convicted in 2004, when you were twenty years old, in Rapides Parish, of Manslaughter as part of a plea bargain arrangement from the original charge of Second Degree Murder. As a result of that plea, you received a sentence of twenty-five (25) years at hard labor. It seems as if your criminal record has lasted as long as you have been an adult. In July of 2001, some six weeks after you turned seventeen, you were arrested on the charge of Simple Burglary, for which no disposition is found. Two months later you were arrested on the charges of Obstruction of Justice and Second Degree Battery, for which you received a probated sentence for a plea to the reduced charge of Simple Battery. That probation, by the way, was revoked. Two months after that, you were arrested for three misdemeanors, which were either dismissed or nolle prossed. In March of 2002, you were arrested for Contempt of Court for which no disposition exists. And the last entry occurred approximately one year later with your arrest for Second Degree Murder in January of 2003. Thus, it seems your entire adult life has been spent with a more than comfortable relationship with Louisiana's criminal justice system. This is not a record of a person who simply makes a mistake. Rather, it is the record of a career criminal and apex predator. As a result, it appears that you have difficulty operating in normal society without resorting to violence or some other form of criminal activity.

*Sentences Imposed for Similar Crimes*

As previously noted, the maximum penalty for second degree battery at the time of Defendant's offense was eight years at hard labor and a two thousand dollar fine. La.R.S. 14:34.1(C). Defendant received six years despite his extensive criminal history. Defendant was originally facing an aggravated second degree battery charge, which carried a maximum sentence of fifteen years at the time of

Defendant's offense. La.R.S. 14:34.7(C). Defendant benefited from a plea deal, in which he pleaded to the lesser charge of second degree battery and the State agreed not to pursue a habitual offender bill.

In *State v. Sanders*, 17-679 (La.App. 3 Cir. 1/31/18), 238 So.3d 1098, *writ denied*, 18-342 (La. 12/17/18), 257 So.3d 1261, this court upheld a five year sentence for second degree battery, which was the maximum sentence at the time of the defendant's offense. The defendant threw the victim down the stairs, held her against her will, threatened to harm her with a meat skewer, sprayed lighter fluid on her and threatened to set her on fire, hit her multiple times on the top of her head with a knife, kicked her, threw her to the ground, seriously injured her head, and slapped her. As previously set forth, Defendant stipulated at his guilty plea hearing that he attacked Mr. Guillory so severely that Mr. Guillory had to be airlifted to the hospital where he spent several days, it was thought that Mr. Guillory would die from his injuries, and he now suffers memory problems and brain damage. Thus, his offense is comparable to that committed in *Sanders*.

In *State v. Barnes*, 12-667 (La.App. 3 Cir. 12/5/12), 103 So.3d 1254, this court upheld a sentence of four years, where the maximum at the time of the offense was five years, and the defendant had prior arrests and/or convictions for simple battery, second degree battery, and domestic abuse battery. The victim in *Barnes* sustained a broken jaw in a fight that required screws and plates to correct the injury. As previously noted, Defendant in the present case has similar arrests and convictions in his past with the additional fact that he is currently serving time for a manslaughter conviction. The injury sustained by Mr. Guillory in this case is also much more severe than in *Barnes*.

As this court noted in *Barling*, 779 So.2d 1035, the trial court has great discretion in shaping sentencing and appellate courts should respect that discretion

absent an abuse of discretion. Given the factors set forth herein, we cannot say that the trial court abused its discretion in sentencing Defendant to six years at hard labor. Accordingly, Defendant's sentence is affirmed.

**DECREE:**

Based on the foregoing, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.