# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 21-14 consolidated with 21-15

**STATE OF LOUISIANA**

**VERSUS**

**JAMEEL D. GREEN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 17-4637/38 & 17-4824/25/26
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHARON DARVILLE WILSON**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville Wilson, Judges.

**CONVICTIONS AFFIRMED;**
**SENTENCE VACATED IN PART; REMANDED WITH INSTRUCTIONS.**

**Ann Sheridan Siddall**
**Attorney at Law**
**P. O. Box 1154**
**Vidalia, LA 71373**
**(318) 336-4267**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Hon. Bradley R. Burget**
**District Attorney - Concordia Parish**
**4001 Carter St., Suite 9**
**Vidalia, LA 71373**
**(318) 336-5526**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Austin L. Lipsey**
**McLemore Law Firm, LLC**
**200 Advocate Row, Suite B**
**Vidalia, LA 71373**
**(318) 336-9189**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Ravi G. Shah**
**Attorney At Law**
**816 N.Columbia**
**Covington, La 70433**
**(985) 888-1694**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jameel D. Green**

**WILSON, Judge.**

In these consolidated cases, Defendant, Jameel D. Green, was charged by bills of information with various crimes related to possession and distribution of methamphetamine. After a jury trial, Mr. Green was convicted of one count of possession of methamphetamine with intent to distribute, a violation of La.R.S. 40:967(A)(1); one count of illegal possession of weapons along with a controlled dangerous substance, a violation of La.R.S. 14:95(E); and three counts of distribution of methamphetamine, in violation of La.R.S. 40:967(A)(1). Mr. Green was sentenced to serve a total of thirty-nine years at hard labor on the five charges. Mr. Green now appeals the judgment of the trial court, requesting that his conviction and sentence be vacated, and the case remanded for new trial. For the following reasons, we affirm the convictions, affirm the sentence for illegal possession of weapons and controlled dangerous substances, and remand for resentencing on the remaining sentences with instructions.

I.

**ISSUES**

We must decide:

(1)     whether the trial court erred in sentencing Mr. Green under the wrong statutory law as Act 281 enacted by the Louisiana Legislature and effective as of August 1, 2017, applied;

(2)     whether the sentence imposed was excessive and violated Mr. Green's constitutional right against cruel and unusual punishment;

(3)     whether Mr. Green was prejudiced by comments made by the prosecution in closing arguments; and

(4)     whether Mr. Green failed to receive a fair trial because evidence seized by police was not maintained properly.

## II.

## FACTS AND PROCEDURAL HISTORY

On September 28, 2017, Concordia Parish Sheriff's deputies executed a traffic stop on Luke Hutchins and found him in possession of methamphetamines. After a conversation with Lieutenant John Cowan, Mr. Hutchins agreed to be a confidential informant (CI) in exchange for not being arrested. Mr. Hutchins identified Mr. Green as a drug dealer who could supply methamphetamine, and he was paired with undercover officer Chad Fuqua to make drug purchases. Mr. Hutchins, accompanied by Officer Fuqua, made three methamphetamine purchases from Mr. Green on November 15, 2017, November 20, 2017, and November 26, 2017. The first two purchases were made at the residence of Mr. Green, and the final purchase took place at a local dollar store. After the third buy, Lieutenant Cowan applied for and obtained a search warrant for Mr. Green's home. On November 29, 2017, Concordia Parish Sheriff's deputies executed the search warrant and recovered approximately twenty-four grams of methamphetamine, a .38 caliber pistol, a .22 caliber rifle, and $906 in cash all stashed behind the toilet in the bathroom. Officers also seized a DVR home security system, and mail addressed to Mr. Green. Mr. Green was formally charged on January 19, 2018, with the following charges and case numbers subject to this appeal:

> 17-4637—La.R.S. 40.967(A)(1) Possession with Intent to Distribute Schedule II CDS
>
> 17-4638—La.R.S. 14:95(E) Illegal Possession of a weapon and CDS
>
> 17-4824—La.R.S. 40:967(A)(1) Distribution of CDS Schedule II (Methamphetamine)
>
> 17-4825—La.R.S. 40:967(A)(1) Distribution of CDS Schedule II (Methamphetamine)

2

> 17-4826—La.R.S. 40:967(A)(1) Distribution of CDS Schedule II (Methamphetamine)

A jury trial took place on the 18th and 19th of June 2019 and the jury unanimously returned a guilty verdict as to each count. Mr. Green filed a motion for new trial on July 29, 2019, which was denied. On July 31, 2019, Mr. Green was sentenced as follows:

> 17-4824—Seven years at hard labor, two years without benefit of probation, parole, or suspension of sentence
>
> 17-4825—Ten years at hard labor, two years without benefit of probation, parole, or suspension of sentence to run consecutive to 17-4824
>
> 17-4826—Fourteen years at hard labor, two years without benefit of probation, parole, or suspension of sentence to run consecutive to 17-4824 and 17-4825
>
> 17-4637—Seven years at hard labor to run concurrent to 17-4824, 17-4825, 178-4826
>
> 17-4638—8 years at hard labor without benefit of probation, parole, or suspension of sentence to run concurrent to 17-4637.

Mr. Green was given credit for time served. A motion to reconsider sentence was filed and a hearing was held September 4, 2019. The trial court denied the motion, and Mr. Green now appeals.

### III.

### LAW AND DISCUSSION

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent.

3

The first error concerns the advisement of the time limitation for filing an application for post-conviction relief. Mr. Green was told by the trial court that he had two years to apply for post-conviction relief. We find that the trial court failed to properly advise Mr. Green of the time limitation for filing an application for post-conviction relief. Louisiana Code of Criminal Procedure Article 930.8 provides that a defendant has two years "after the conviction and sentence become final" to seek post-conviction relief. Accordingly, the trial court is directed to inform Mr. Green of the provisions of article 930.8 by sending appropriate written notice to him within ten (10) days of the rendition of this opinion and to file written proof that Mr. Green received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163. The second error is raised in Mr. Green's first assignment of error and is addressed below.

**ILLEGAL SENTENCES**

In his first assignment of error, Mr. Green contends that the trial court erred in sentencing him under the wrong statutory law since Act 281 by the Louisiana Legislature, effective August 1, 2017, applied. We agree. Mr. Green was arrested and convicted of crimes taking place in November 2017, therefore, the amended version of the statute applied. The trial court sentenced Mr. Green believing that the proper sentencing range for his violations of La.R.S. 40:967 was two to thirty-one years. However, effective August 1, 2017, La.R.S. 40:967(B)(1) provides that the proper sentencing range in cases involving an aggregate weight of less than twenty-eight grams is one to ten years. Consequently, the fourteen-year sentence under docket number 17-4826 exceeds the maximum sentencing limit and must be vacated and remanded for resentencing.

Additionally, each of the distribution sentences includes a two-year exclusion of benefits. Louisiana Revised Statues 40:967(B)(1) does not authorize the exclusion of benefits, and these exclusions are illegal. An appellate court may correct an illegal sentence when the correction does not involve the exercise of sentencing discretion. *State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694. Thus, the sentences must be amended to eliminate the exclusions.

Although the other sentences for violations of La.R.S. 40:967 are within the sentencing range, as the record reflects that the trial court made its sentencing decisions based upon an incorrect sentencing range of two to thirty-one years, we choose to vacate all the sentences under this statute and remand for resentencing. This court has stated, "'[A] sentence founded on an incorrect view of the law should usually be set aside.' *State v. Spruell*, 403 So.2d 63,64 (La.1981)." *State in the Interest of D.B.*, 14-85 (La.App. 3 Cir. 5/7/14), 141 So.3d 296,306-07. In analyzing this issue, the second circuit observed:

> In *State v. Spruell*, 403 So.2d 63 (La.1981), the defendant pled guilty to possession of marijuana with intent to distribute and was sentenced to five years in prison. The defendant appealed his sentence, arguing, inter alia, that the trial court failed to utilize the correct penalty provisions during sentencing. The record revealed that the court imposed the sentence, cited the statute pertaining to distribution of Schedule II narcotics, rather than a Schedule I narcotic, such as marijuana. The court mistakenly believed that it was imposing the minimum sentence allowable under the charged statute. However, the correct sentencing range for the charged statute was zero to 10 years. *Id*. The Louisiana Supreme Court vacated the sentence, stating:
>
>> In reality, the cited penal provision, R.S. 40:967(B)(1), deals only with the intended distribution of Schedule II narcotics, see R.S. 40:964, a classification not including marijuana, the distribution of which carries no minimum penalty and a maximum of ten rather than thirty years' imprisonment. Though the sentence actually imposed fell within the statutorily-prescribed range, the danger that such a mistake of law might have affected the trial court's attempt at leniency appears significant. For this reason, a

> sentence founded on an incorrect view of the law should usually be set aside.

> The trial court's mistaken view of the statutorily authorized penalty also resulted in its unknowing imposition of a relatively stiff sentence rather than a minimal one. The imposition of such an apparently severe sentence requires record justification by the trial court, whose responsibility it is to ensure that the sentence has a sufficient informational basis to protect the accused's right of review on appeal. Such factual justification is especially crucial where, as here, the accused's guilty plea leaves no other evidence of record which clearly illumines the trial court's sentencing choice.

*Id.* at 64-65 (internal citations omitted).

*State v. Preston*, 47,273, pp. 14-15 (La.App. 2 Cir. 8/8/12), 103 So.3d 525, 533-34.

Although the second circuit distinguished *Spruell* because "nothing in this record convinces us that the trial court intended to impose a lenient sentence for this defendant[,]" it did not question *Spruell's* reasoning. *Id*. at 535. In Mr. Green's case, the trial court incorrectly believed the sentencing range was two to thirty-one years. Thus, the trial court gave Mr. Green sentences it believed to be in the lower to middle range of possible sentences. However, under the correct sentencing scheme, the trial court imposed two higher-range sentences (seven years), a maximum sentence (ten years), and an illegally excessive sentence (fourteen years).

Prior to trial, the state expressed their desire for maximum sentences to the court. In determining the sentence, the trial court went through each of the factors provided in La. C.Cr.P. art. 894.1. Although the trial court found that there were no mitigating factors, it chose to impose sentences it believed to be on the lower end of the sentencing range. It does not appear from the record that the trial court intended to impose such severe sentences, and undoubtedly, the mistaken view of

the statutorily authorized penalty directly influenced the penalty received by Mr. Green. Accordingly, the sentences in case numbers 17-4637, 17-4824, 17-4825, and 17-4826 are vacated and remanded for resentencing. This does not affect the sentence for illegal possession of weapons and controlled dangerous substances and the sentence imposed in 17-4638 is affirmed.

## CONSECUTIVE SENTENCES

In his second assignment of error, Mr. Green asserts that the trial court's order that some of his sentences be served consecutively created an excessive sentencing scheme. This court recently address a similar argument in 2020:

> In *State v. James*, 15-414, pp. 2-4 (La.App. 3 Cir. 10/7/15), 175 So.3d 1176, 1178, *writ denied*, 15-2059 (La. 1/9/17), 208 So.3d 876, *and writ denied*,15-2044 (La. 1/9/17), 214 So.3d 858, this court reiterated the standard for reviewing excessive sentence claims:
>
>> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.
>
> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).
>
> . . . .
>
> Even though a penalty falls within the statutory sentencing range, it may still be unconstitutionally excessive:

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983) (citing *State v. Ray*, 423 So.2d 1116 (La.1982); *State v. Keeney*, 422 So.2d 1144 (La.1982); *State v. Duncan*, 420 So.2d 1105 (La.1982)). "[M]aximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender." *State v. Quebedeaux*, 424 So.2d 1009, 1014 (La.1982) (citing *State v. Jones*, 398 So.2d 1049 (La.1981)). "The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D).

In his first assignment of error, Defendant argues that consecutive nine-year sentences are excessive considering he sold a small amount of methamphetamine to a confidential informant who is also his friend. In his second assignment of error, Defendant argues that his sentence is excessive because the trial court failed to individualize his sentences as required by La.Code Crim.P. art. 894.1. Defendant argues these assignments together and asserts that the aggregate eighteen-year sentence is excessive considering all mitigating factors and ameliorative changes. He asks that this court vacate the trial court's order of consecutive sentences and remand the case for the imposition of lesser concurrent sentences.

Defendant was convicted of two counts of distribution of methamphetamine, an offense punishable by a minimum sentence of two years imprisonment and a maximum sentence of thirty years imprisonment, in addition to a maximum fine of fifty thousand dollars. *See* La.R.S. 40:967(B)(1)(eff. 8/15/08-7/31/17). Defendant was sentenced within the statutory range, his sentence being nine years on

each count, court costs, and one hundred and fifty dollars for the PSI preparation.

The general rule for concurrent versus consecutive sentences is set forth in La.Code Crim.P. art. 883:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

Article 1, § 20 of the Louisiana Constitution prohibits excessive or unusual punishment. The factual situation in this case fits what Article 1, § 20 is designed to prevent. These two small transactions occurring only two days apart and involving small amounts of methamphetamine constitute parts of a common scheme. Louisiana Code of Criminal Procedure, Article 883 directs that the terms of imprisonment shall be concurrent unless the court expressly directs that they be served consecutively.

In support of his request that the consecutive sentences should be vacated, Defendant cites *State v. Nixon*, 51,319 (La.App. 2 Cir. 5/19/17), 222 So.3d 123, *writ denied*, 17-966 (La. 4/27/18), 239 So.3d 836, wherein the Second Circuit found that the consecutive nature of three, twenty-year sentences for three counts of distribution of a small amount of controlled dangerous substance was excessive. In *Nixon*, the defendant was convicted of two counts of distribution of marijuana and one count of distribution of cocaine to a confidential informant for a combined sum of less than $100; the trial court imposed twenty-year sentences on each count to run consecutively -- an aggregate sentence of sixty years, and a de facto life sentence for the forty-two-year-old defendant. The second circuit held that, although the sentences were not unconstitutionally excessive, the trial court's order that the sentences imposed be served consecutively was unconstitutionally excessive. The second circuit reasoned that the sixty-year sentence was disproportionate to the offenses and imposed a purposeless and needless infliction of pain and suffering.

It is undisputed that on May 15, 2018, and May 17, 2018, Defendant sold methamphetamine to his friend and confidential informant, Jason Kittlin. Although the substance was not weighed by the North Louisiana Crime Lab, the current record indicates that the

informant purchased methamphetamine from Defendant for fifty-five dollars on May 15th and no more than one hundred dollars on May 17th.

. . . .

Also pertinent to our decision, this court recognizes the ameliorative changes that became effective approximately two months after Defendant committed the offenses herein. As noted in *State v. McGowan*, 17-623, p. 12 (La.App. 3 Cir. 12/6/17), 258 So.3d 609, 616, "Though not required to do so, the trial court is permitted to consider the ameliorative changes enacted by the 2017 amendment to the penalty provision in keeping with the spirit of the reforms articulated." These 2017 changes reduced the sentencing for distribution of methamphetamine sold in certain quantities. A review of those changes is instructive.

Effective August 1, 2017, La.R.S. 40:967 was amended and the sentence for distribution of methamphetamine became dependent on the weight of the substance. The new law provides for sentences from one to ten years imprisonment and a fine of up to fifty thousand dollars when the aggregate weight of the controlled substance is less than twenty-eight grams, and a sentence of one to twenty years and a fine of up to fifty thousand dollars when the aggregate weight is more than twenty-eight grams. This is a significant change from the previous language, which sentenced all offenders, regardless of the substance's weight, to not less than two or more than thirty years imprisonment and a fine of up to fifty thousand dollars.

. . . .

We recognize that the trial court has discretion in sentencing and under La.Code Crim.P. art. 883. However, even the trial court recognized the need and possibility for rehabilitation of Defendant when it commented that he be housed in a facility that offers addictive disorder programs. Thus, following the guidance of *Nixon*, 222 So.3d 123, and considering the time frame of the occurrences, La. Code Crim.P. art. 883, 2017 La. Acts No. 281, and the findings supporting the reformation of La.R.S. 40:967, we find that the imposition of consecutive sentences in this case "is grossly disproportionate to the severity of the crime as to shock our sense of justice" and "makes no measurable contribution to acceptable penal goals[.]" *Barling*, 779 So.2d at 1042.

. . . .

We find merit in Defendant's assertion that the consecutive nature of his sentences is excessive; thus, we vacate the sentences in

10

part and remand the matter to the trial court with instructions to impose concurrent sentences.

*State v. Lee*, 20-80, pp. 3-11 (La.App. 3 Cir. 11/18/20), 305 So.3d 1048, 1050-54 (footnotes omitted). Like the defendant in *Lee*, Mr. Green was convicted for three small sales of methamphetamine to a CI over a short period of time. The offenses constituted parts of a common scheme or plan and ordinarily would run concurrently to one another. Unlike the defendant in *Lee*, who had an extensive record, Mr. Green had no prior record. The reasoning of this court in *Lee*, would suggest that the consecutive nature of the sentences was excessive. However, given that the sentences for the drug offenses have been vacated and remanded for resentencing, we find that this issue is rendered moot.

## UNDUE PREJUDICE

In his third assignment of error, Mr. Green argues that the state created undue prejudice during its closing argument by appealing to jurors' "common sense." Particularly, Mr. Green refers to the following language:

> Guys, when we started this, y'all remember back to Mr. Burget. He kind of give [sic] y'all and the judge give [sic] y'all a definition of reasonable doubt. And that was, basically, good judgment and common sense. For y'all not to find Mr. Green guilty of distributing meth and on the three different counts and also the possession with intent to distribute methamphetamine, along with the firearm charge, you just wouldn't be using your common sense and good judgment. It makes no sense."

Although Mr. Green takes issue with this language on appeal, he did not lodge a contemporaneous objection, therefore, he failed to preserve the issue for appeal. La.Code Crim.P. art 841. In fact, Mr. Green's counsel responded with its own references to "common sense." Thus, this assignment lacks merit.

## EVIDENCE IMPROPERLY MAINTAINED

11

In his final assignment of error, Mr. Green contends that his trial was unfair because the evidence was not properly maintained. Mr. Green does not cite any legal provisions or jurisprudence, but he asks for a new trial. In his written motion for new trial, he made only a general citation to La.Code Crim.P. art. 851. The supreme court has explained:

> Under La.C.Cr.P. 851, newly discovered evidence must first be determined to be "material." Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed. *State v. Marshall*, 94-0461, p. 16 (La. 9/5/95), 660 So.2d 819, 826 (citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). "A reasonable probability is one that is sufficient to undermine confidence in the outcome" of the trial. *Marshall*, 94-0461, p. 16, 660 So.2d at 826. A district court should ascertain on a motion for new trial "whether there is new material fit for a new jury's judgment. The only issue is whether the result will probably be different." *State v. Watts*, 00-0602, p. 9 (La. 1/14/03), 835 So.2d 441, 449. The decision of whether to grant or deny a motion for new trial is within the trial judge's sound discretion. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So.2d 923.

*State v. Holliday*, 17-1921, pp. 78-79 (La. 1/29/20), __ So.3d __, *cert. denied*, __ U.S. __, 141 S.Ct. 1271 (2021).

Mr. Green first points to the fact that the evidence custodian over his case, Major James Boren, was arrested in 2020 and is currently pending trial for felony theft, misdemeanor theft, and theft of a firearm. Mr. Green then discusses the $906 in cash which was seized from Mr. Green's home during the execution of the search warrant. During the trial there was a discrepancy regarding the denominations of the cash in the evidence envelope not matching the evidence logging sheet. The state explained this discrepancy to the jury as a mistake and further argued that the $906 was not necessary to its case. Mr. Green now insinuates that due to Major Boren's arrest, there may have been evidence tampering.

However, Mr. Green does not point to any evidence of evidence tampering nor is there any contained in the record.

Mr. Green also argues that a DVR security system seized by police worked before it was seized, the state could not get it to work, and the security footage on the DVR would have shown he was innocent. This was previously argued by Mr. Green in his written motion for new trial and at the hearing where the following colloquy took place:

### MR. WILLIAMS [Defense Counsel]:

Well, Your Honor, it was -- our understanding was at first the District Attorney's office couldn't get in the video because they're saying it was locked or they needed a pass code to get in. All right. And then after that when they couldn't pull anything off of it -- during our trial, yes, Your Honor, they did make it physically available to us. So from a physical standpoint it's not new evidence because it was made available prior to trial. Without being able to view whatever was on the surveillance video, that -- whatever is on the video could be considered new evidence. We don't know what's on the video. So I can't go as far as saying the video is not new evidence because it's never been viewed. That's what we're arguing. Without actually being able to view the surveillance tapes, Your Honor, there is possible new evidence out there that could turn one way or another for Mr. Green. So that's our position as far as why we consider the surveillance video evidence that -- without being -- evidence that was vital to Mr. Green's defense.

### MR. BURGET[Prosecutor]:

If I could interject, Your Honor, the issue came up at a pre-trial conference where Mr. Green indicated to Mr. Williams and I that this video existed and it could be something exculpatory. It's my position it would be inculpatory, not exculpatory. We made all those efforts to try to make that video play. We thought it was a password issue. We got that from law enforcement. Once our technician from the DA's office looked at it, it was a defective device. I mean, he removed the hard drive from the device to try to get this to play on some other device and it's like Mr. Lipsey said, not a very common device. And we tried to find one in the community and searched for one and could not find one. We made all that information available to Mr. Williams. So what's on the video -- if it was recorded, we don't even know. So we just don't know. And there haven't been any dilatory efforts by the State or by Mr. Williams. This was all attempted to get accomplished to find out what was on the video or even when it was recorded. Because it was my

understanding from the officers and their testimony that there was a television set up in his house and it was showing what was going on the outside of his house of the video, but whether or not that was recorded on the DVR, we don't know. We do not know. It would be more of a post-conviction release [sic] matter at this particular junction and not a new evidence because that evidence was made available to Mr. Green. And Mr. Green gave that information (coughing - inaudible) video and that's what we did. We wanted to do our due diligence. If it was something exculpatory, we wanted to find that out prior to trial.

**THE COURT:**

All right. . . . On the Motion for a New Trial based on the video, I find that the video was made available to Mr. Green and I deny the Motion for New Trial on that basis.

**MR. BURGET:**

Your Honor, I just want to clarify, it's not actually a video. It's just a DVR that may have recorded something or it may not have. It's not actually a disc or some kind of device like that. It's actually a DVR.

Mr. Green argues that the DVR was working before it was seized, but he offers no evidence of such fact. Mr. Green was afforded an opportunity to try to get the DVR to work prior to trial and Mr. Green's team was unsuccessful in accessing the recording if any such recording exists on the machine. In light of *Holliday*, we find that Mr. Green has failed to demonstrate that the DVR system contains any material evidence. It is not even clear that it contains any evidence at all since nobody has been able to recover any recorded footage from it. Therefore, we are unable to conclude the trial court abused its discretion by denying the motion for new trial. For the reasons discussed, this assignment lacks merit.

IV.

**CONCLUSION**

For the foregoing reasons, Mr. Green's convictions and the sentence for illegal possession of weapons and controlled dangerous substances are affirmed.

14

The sentences for distribution of methamphetamine and the sentence for possession of methamphetamine with the intent to distribute are vacated and remanded for resentencing. Additionally, the trial court is directed to inform Mr. Green of the provisions of article 930.8 by sending appropriate written notice to him within ten (10) days of the rendition of this opinion and to file written proof that Mr. Green received the notice in the record of the proceedings.

**CONVICTION AFFIRMED; SENTENCE VACATED IN PART; REMANDED WITH INSTRUCTIONS.**