779 So.2d 1035 (2001)
STATE of Louisiana
v.
Robert Edward BARLING.
Nos. 00-1241 and 00-1591.
Court of Appeal of Louisiana, Third Circuit.
January 31, 2001.
*1036 Hon. Don M. Burkett, District Attorney, Many, LA, Counsel for Plaintiff/Appellee State of Louisiana.
Lawrence Charles Billeaud, Lafayette, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge DOUCET, Judge SULLIVAN, and Judge GREMILLION.
*1037 GREMILLION, Judge.
In this case, the defendant, Robert Barling, challenges his conviction and sentence for attempted sexual battery, indecent behavior with a juvenile, and attempted molestation of a juvenile.

FACTS AND PROCEDURE
Defendant was charged with one count of sexual battery, a violation of La.R.S. 14:43.1, in one bill of information and in another bill of information with four counts of molestation of a juvenile, violations of La.R.S. 14:81.2. Both bills of information alleged that the violations occurred between March 1, 1997 and December 25, 1998,[1] and involved Defendant's behavior with his granddaughter, N.B., when she was between ten and twelve years old. Defendant entered a plea of not guilty.
The State filed a notice of intent to introduce other crimes evidence against Defendant. The trial court subsequently ruled that the evidence of other acts of misconduct by Defendant would be admissible at trial for all purposes allowed by law. Defendant and the State agreed to try the sexual battery charge together with the molestation charges. A six-member jury found Defendant guilty of the lesser included offense of attempted sexual battery on the sexual battery charge and guilty of the lesser included offenses of indecent behavior with a juvenile and attempted molestation of a juvenile on two of the four molestation charges.
Thereafter, the trial court sentenced Defendant to the statutory maximum of five years imprisonment at hard labor for the attempted sexual battery conviction, seven years imprisonment at hard labor for the indecent behavior with a juvenile conviction, and five years imprisonment at hard labor for the attempted molestation of a juvenile conviction, with the sentences to run concurrently. Defendant now appeals his convictions and sentences claiming the trial court erred by allowing the State to present evidence of other crimes which exceeded its notice of intent to introduce such evidence, and by ordering him to serve an unconstitutionally excessive sentence. We consolidate Defendant's appeals of the sexual battery charge and the molestation charges because the cases were tried together in the trial court.

THE EVIDENCE
C.B., Defendant's granddaughter and a cousin of the victim, N.B., testified that she and her month-old baby spent at least one night at Defendant's home in Many, Louisiana, shortly before Christmas 1998. N.B. and several other family members also stayed there during this time. C.B. testified that N.B. found her in the dining room crying during this visit. She claimed she was crying because Defendant had rubbed her back earlier in the evening as she was putting her son to sleep. C.B. stated that she told N.B. why she was crying and N.B. responded to this news by crying also and stating that Defendant had been "messing with" her when she was ten years old.
C.B. testified that she believed N.B. because Defendant did the same thing to her when she was N.B.'s age. The State then introduced into evidence a certified copy of the minutes from a 1990 court proceeding in Natchitoches Parish, which showed that Defendant had been charged with molestation of a juvenile. The juvenile was C.B., who was ten years old at the time.[2] Defendant subsequently pled guilty to the amended charge of indecent behavior with a juvenile and received a three-year suspended sentence, probation, and community service work.
At the time of trial, N.B. was thirteen years old and lived in Natchitoches, Louisiana. *1038 She testified that she was at Defendant's house during Christmas 1998, when she "told [C.B.] that my grandfather was messing with me" by "feeling on me and telling me bad things."
N.B. testified that the first time Defendant did something to her, she was about eleven years old. At trial, N.B. recounted this incident by saying:
My grandmother and Stephen, my cousin ... went to the store. Just me and my grandfather was in the house. And I was in the living room and he came in there and he was telling me dirty things and trying to feel on me and everything and I told him if he didn't get away I was gonna tell my grandma and he got away. But he kept on coming back.
. . . .
... He used to tell me he wanted to screw me and that he wanted to feel on my body and everything.
N.B. claimed that at this time, Defendant touched her buttocks and arms over her clothes.
She testified that the next incident occurred when she was watching television at night in the living room of Defendant's house and her grandmother was in bed in her bedroom. According to N.B., Defendant came into the living room and told her that if she did not "screw him," he would kill her. She said that during that episode Defendant touched her breast underneath her clothes.
N.B. testified that another incident occurred at a different house where her grandparents had moved and probably during a holiday, as that was the only time she typically stayed with her grandparents. According to her:
I was in the living room. Again, in this house, you can't see the living room from where [my grandmother's] bed is. And I was in the chair where ... my legs were over the side of the chair but he was supposedly in bed.... [The Defendant] started feeling my butt telling me I had a smooth butt and everything. He was just telling me stuff like he wanted to screw me and if I didn't, if I told anybody that he was gonna kill me and everything.
On this occasion, N.B. told Defendant that she would tell her grandmother if he continued so he went back to his room.
The final incident N.B. testified about was the encounter she had with C.B. N.B. testified:
[C.B.] came crying to me and I asked her why she was crying and she wouldn't tell me. And finally, she told me that Grandpa was messing with her. When she was laying on the bed, Grandpa was rubbing her on the back and everything.... I said, "don't cry, because it happened to me, too." And she just started screaming. She told me she was gonna kill my grandpa for doing what he did to me.
N.B. also testified that she and C.B. were sleeping in the same room that evening and, when C.B. got up to go to the bathroom, Defendant came into the room and began rubbing her back; he also stared at her and C.B. for a long time.
Nelda Barling, Defendant's wife of forty-four years, testified that she owned a flea market in Many, Louisiana, where she and Defendant both worked. Nelda stated that, according to the records of her business which indicated when Defendant was at the flea market, he would never have been alone with N.B. at home. She testified that she never left Defendant and N.B. alone at any time and that N.B. always followed her around.
Regarding the incident alleged to have taken place around Christmas 1998, Nelda testified that she stays up late at night while Defendant goes to bed at 7:00 p.m. every night. Nelda stated that she was not aware of any confrontation between Defendant and N.B. or C.B. at this time. She testified that she caught N.B. smoking in her bathroom on this visit and informed N.B.'s parents of this incident.
*1039 Nelda stated that N.B. always slept with her when she visited, and neither N.B.'s nor C.B.'s parents gave any instructions regarding the girls being left alone with Defendant during visits. She further testified that Defendant did not do what he was accused of in 1990, and that he only entered a plea of guilty "to save" C.B.
M.B., the Defendant's twenty-two-year-old grandson, who was in the custody of Defendant and his wife when he was a child, testified that he could recall no time that Defendant was alone with N.B. N.B.'s brother testified similarly, adding that he tries to keep an eye on N.B.
Defendant testified that he is sixty-one years old, disabled, and currently lives in Shreveport, Louisiana. He testified that he has been an ordained Baptist minister since 1969. He stated that he was never left alone with N.B. during any of her visits at his house. He denied the allegations against him by both N.B. and C.B. He further testified that he entered a guilty plea to the incident involving C.B. because he did not want to lose his job or embarrass his family, and that the incident in Natchitoches Parish caused such an uproar in his family that he was careful in his conduct afterwards. Defendant likewise denied conducting himself in the manner described at trial with N.B., C.B., or any other teenage female members of his family.
Defendant testified that he and his wife disciplined N.B. by threatening to call her mother after his wife found her smoking in their home during Christmas 1998. Defendant also testified about another incident which occurred during this visit:
[N.B.] slipped into the boys' bedroom with her night clothes on. Her brother come into ... my wife's bedroom and told his grandmother that she needed to go into the bedroom and get [N.B.] out of the bedroom, she was there in her night clothes flirting with the boys. And we disciplined her on that. We didn't whip her or nothing. We talked to her.
B.B., N.B.'s mother, testified as a rebuttal witness. She said that she works as a nurse in Shreveport, Louisiana, and Defendant is her father. B.B. testified that whenever N.B. visited Defendant's house, she gave instructions that N.B. was to sleep in the same room as her grandmother and N.B. was not to be left alone in the house with Defendant. B.B. testified that she gave these instructions because her "father is a known child molester and he always has been and I know what he has done." B.B. claimed that Defendant had molested her from the time she was five years old until she was fourteen or fifteen years old. She said that she was aware of not only sexual contact between Defendant and herself, but with all of her sisters and certain individual girlfriends that she and her sisters had while growing up.
Y.R., another daughter of Defendant, who also testified as a rebuttal witness, said that she was made to watch sexual conduct between Defendant and teenage family members. She also claimed that she was required to act as a lookout for her mother and to signal her father when she came home. Y.R. further testified that she had seen Defendant with two of her sisters, and he was involved with her from the time she was ten years old until she was sixteen years old when she left home.

ERRORS PATENT
We review all appeals for errors patent on the face of the record in accordance with La.Code Crim.P. art. 920 and, after reviewing the record, we find there is one error patent. The transcript of Defendant's sentencing reveals that the trial court imposed concurrent sentences, but the minutes of sentencing do not reflect that his sentences were ordered to run concurrently. Thus, we recommend that the case be remanded and instruct the trial court to amend the minutes to reflect same.

*1040 EVIDENCE OF OTHER CRIMES
In his first assignment of error, Defendant argues that the trial court erred by allowing the State to present other crimes evidence which exceeded the scope of its notice of intent to introduce other crimes evidence. The other crimes evidence, which it appears Defendant complains of, is evidence that he abused his daughters in previous years. The State argues that, while it gave notice of its intent to introduce Defendant's prior conviction for indecent behavior with a juvenile, the evidence he complains of was given only to rebut his testimony of his innocence and his attempt to explain away his previous conviction. We agree.
We note that the State filed a notice of intent to introduce other crimes evidence against Defendant, that a hearing was held on that notice of intent, and, that after obtaining written memoranda from Defendant and the State, the trial court ruled that the evidence of other acts of misconduct by Defendant would be admissible at trial for all purposes allowed by law; however, such notice of intent and subsequent hearing and trial court ruling were unnecessary because the evidence was offered as rebuttal evidence. Thus, the State's presentation of other crimes evidence is admissible without Prieur notice. In State v. Silguero, 608 So.2d 627, 630 (La. 1992) (citation omitted), the supreme court stated:
Absent evidence that the state evaded Prieur notice requirements by deliberately reserving its other crimes evidence for cross-examination or rebuttal, the Prieur notice requirements do not apply where, as here, defendant, through his own testimony, makes the other crimes evidence relevant. The record does not reveal that the state withheld using the other crimes evidence in its case-in-chief to circumvent Prieur notice requirements. Thus, under the circumstances, the other crimes evidence was admissible without Prieur notice.
See also State v. Clark, 95-1354 (La.App. 3 Cir. 12/11/96); 687 So.2d 470, writ denied, 97-0175 (La.6/13/97); 695 So.2d 986. Hence, because Defendant is only complaining about evidence offered to rebut his testimony, that he never conducted himself in the manner described at trial with any teenage member of his family, such evidence does not require Prieur notice.
However, even assuming that Prieur notice was required, the record clearly reveals that Defendant had notice of intent to introduce the other crimes evidence. The State filed a "Notice of Intent to Introduce Other Crimes Evidence," in which it stated, "[t]he State intends to introduce evidence of other crimes (other `bad acts') pursuant to La.Code Evid. Art. 404(B)." Although the essence of the motion was the State's intent to introduce Defendant's conviction for indecent behavior with a juvenile in Natchitoches Parish, after a hearing on the motion, where several witnesses testified,[3] the trial court ruled that "the evidence of other acts of misconduct by the defendant are hereby deemed admissible for all purposes allowed by law."
Although the actual notice filed by the State did not specifically mention any of the allegations against Defendant by any of his daughters, the evidence presented and considered at the hearing on the notice of intent, the memoranda submitted *1041 by both Defendant[4] and the State,[5] the trial court's ruling on the notice of intent to use other crimes evidence, and the description of the scope of the Prieur hearing given by the trial court in response to Defendant's objection to Y.R.'s testimony, provide a sufficient basis to conclude that Defendant was apprized of the State's intent to use evidence of his conduct with his daughters. Moreover, Defendant failed to object to B.B.'s testimony, the first witness called on rebuttal, in which she clearly outlined her knowledge of Defendant's sexual conduct with family members other than C.B. Defendant objected only when Y.R. was called to testify, which suggests that he had adequate notice of such evidence. Accordingly, even though we find that notice of intent to introduce other crimes was unnecessary, such notice was sufficient in this case and the evidence was admissible under La.Code Evid. art. 404(B). See State v. Jackson, 625 So.2d 146 (La.1993); and State v. Miller, 98-0301 (La.9/9/98); 718 So.2d 960.
Therefore, this assignment of error has no merit.

EXCESSIVE SENTENCE
In this assignment of error, Defendant claims that his sentences are excessive. At the conclusion of the sentencing hearing, he made a motion that the trial court considered as a Motion for Reconsideration of Sentence. The oral motion did not specify any basis for the motion. The trial court instructed Defendant to follow up the oral motion with a written motion. He did not file a written motion to reconsider sentence.
The failure to timely file a written motion to reconsider sentence or to orally urge any specific ground for reconsideration at sentencing precludes a defendant from objecting to the sentence imposed. State v. Moore, 98-1423 (La.App. 3 Cir. 3/3/99); 734 So.2d 706. See also State v. King, 95-344 (La.App. 3 Cir. 10/4/95); 663 So.2d 307, writ denied, 95-2664 (La.3/15/96); 669 So.2d 433. La.Code Crim.P. art. 881.1 (emphasis added) serves as the basis for this restriction and provides, in pertinent part:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.

. . . .
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In cases where courts have held that an oral objection alone is sufficient to preserve the issue for review, the oral objection *1042 contained the basis for the motion, such as excessiveness of sentence. See State v. Caldwell, 620 So.2d 859 (La.1993); State v. Trahan, 98-1442 (La.App. 4 Cir. 12/1/99); 752 So.2d 921. Therefore, since Defendant's oral motion did not set forth any specific grounds to support his claim of excessive sentences, we are relegated to a bare claim of excessiveness. State v. Mims, 619 So.2d 1059 (La.1993), after remand, 626 So.2d 856 (La.App. 2 Cir.1993), writ denied, 93-2933 (La.2/11/94); 634 So.2d 373.
We note that Defendant received the maximum sentence for each offense, but the sentences are to run concurrently. Defendant contends that the facts of this case marginally support a conviction and that any sentence in excess of three years constitutes cruel and unusual punishment. At the sentencing hearing, the trial court reviewed the pre-sentence investigation report, which detailed Defendant's criminal history. The trial court noted that Defendant was charged with molestation of a juvenile and pled guilty to indecent behavior with a juvenile in 1990, and he was convicted of theft by fraud in 1995. The trial court also considered the pre-sentence investigation report which set forth Defendant's work history. The court summarized its consideration of the mitigating and aggravating factors as follows:
Quiet (sic) honestly, the Court has agonized over this sentence. I think that the evidence presented at trial, shows that the Jury should have, or at least could have, convicted you straight up, of the offenses of which you stand charged, subjecting you to 10 years more than what you stand able to receive here today. The charge of Attempted Sexual Battery, in violation of 1443.1, carries with it, a maximum of incarceration sentence of imprisonment either with or without hard labor for five years. The charge of Indecent-Attempted Indecent, excuse me, Attempted Molestation of a Juvenile, violation of 1481.2; five years with or without hard labor; and 1481, Indecent Behavior with a Juvenile, seven years with or without hard labor. I've reviewed throughly (sic), the sentencing provisions of Code of Criminal Procedure, Article 894, the Jurisprudence. In light of the information contained in the Pre-Sentence Investigation and find that, based upon your prior conviction for similar incident, that there is an undo (sic) risk during any period of probation or suspended sentences, that you would commit another crime. The Court is needthat the Defendant is in need of correctional treatment or custodial environment, which has previously never been received, having received probationary treatment in the past. A lesser sentence will deprecate thea lesser sentence than the one imposed, will deprecate the seriousness of this Defendant's actions. There are certain mitigating factors that apply, particularly, there is the fact of his age; his health, and I do not believe that the mitigating factors are of a sufficient weight to justify a sentence lesser than the one I am imposing ...
La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. State v. Etienne, 99-192 (La. App. 3 Cir. 10/13/99); 746 So.2d 124, writ denied, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State *1043 v. Cook, 95-2784 (La.5/31/96); 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
Accordingly, after a complete review of the record, we find that the trial court did not abuse its broad sentencing discretion in sentencing Defendant to the maximum sentence on each count, particularly in light of the fact that the sentences are to run concurrently. Therefore, this assignment of error lacks merit.

CONCLUSION
Defendant's convictions and sentences are affirmed and the trial court is instructed to amend the minutes to reflect that Defendant's sentences were ordered to run concurrently.
AFFIRMED WITH INSTRUCTIONS.
NOTES
[1] The State's original bills of information, filed March 10, 1999, asserted that the charged offenses were committed between March 1, 1997 and April 30, 1997.
[2] C.B. testified that she was eleven years old in 1991.
[3] In the trial court's RULING ON STATE'S MOTION TO USE OTHER CRIMES EVIDENCE which it considered as "the State's Motion to Introduce Evidence of Other Acts of Misconduct perpetrated by the defendant on other family members," the trial court considered "[t]he evidence offered by the State at the Prieur hearing [which] was that evidence adduced by the State in support of its motion to deny the defendant bond." Therefore, there was no actual hearing on the State's motion as it was submitted on memoranda and the evidence adduced at the bond hearing all of which make up part of the record of this case.
[4] Defendant's memorandum submitted in response to the State's notice of intent to use other crimes evidence, described the State's position as follows:

The position of the State, as it is understood by the defendant, is that the State is in possession of non-hearsay evidence that the defendant has engaged in illegal sexual conduct with female members of his family, specifically all of his daughters, while they were under the age of 17 years.
[5] The State's letter memorandum, submitted after the Prieur hearing, explained its position. The State included Defendant's prior guilty plea and resulting conviction and argued:

Defendant's conduct constitutes a course of conduct which establishes motive, intent, design and pattern. This defendant's conduct is consistent with a lustful disposition toward minor female members of his family and the present charges stem from a continuation of this disposition. Thus, the evidence which the State intends to submit falls under an established exception allowing the introduction of this evidence.