# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 22-511


**STATE OF LOUISIANA**

**VERSUS**

**ROBERT EUGENE VASCOCU**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-28990
HONORABLE DESIREE DYESS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## GARY J. ORTEGO
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Gary J. Ortego, Judges.


**AFFIRMED.**

**Billy Joseph Harrington**
**District Attorney**
**R. Bray Williams**
**Assistant District Attorney**
**Tenth Judicial District Court**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**T. Taylor Townsend**
**Attorney at Law**
**P. O. Box 784**
**Natchitoches, LA 71458-0784**
**(318) 238-3612**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Robert Eugene Vascocu**

**ORTEGO, Judge.**

On December 9, 2019, Defendant, Robert Eugene Vascocu, was charged by bill of indictment with negligent homicide, in violation of La.R.S. 14:32. Initially, Defendant pled not guilty to the charge.

On December 8, 2021, Defendant, with his counsel present, withdrew his not guilty plea, entered a plea of guilty to negligent homicide, and acknowledged for the record that there was no plea agreement with the State, nor any sentencing recommendation or sentencing cap. The trial court then fully *Boykinized* the Defendant, accepted the Defendant's plea, ordered a presentence investigation (PSI), and set the matter for a sentencing hearing. Defendant filed a memorandum prior to sentencing in which he argued that, given the facts and circumstances of the case, he should be given a probated or suspended sentence.

On January 20, 2022, the trial court held a sentencing hearing and heard testimony from numerous witnesses, along with arguments from the State and defense counsel. The trial court then sentenced Defendant to the maximum term of five years at hard labor, along with imposing the maximum fine of five thousand dollars and notified Defendant that he had two years to apply for post-conviction relief. Defendant orally objected to the sentence, and on February 18, 2022, filed a "Motion to Reconsider, Amend, or Modify Sentence," with a memorandum in support. In his motion, Defendant claimed the trial court's compliance with La.Code Crim.P. art. 894.1 was inadequate to support his maximum sentence and further that his maximum sentence is constitutionally excessive. By Order signed February 25, 2022, Defendant's motion was denied.

On March 24, 2022, Defendant filed a motion for appeal, which was granted by the trial court. Defendant is now before this court alleging two assignments of error regarding his sentence. For the reasons stated herein, this court affirms Defendant's sentence.

## FACTS

Since this case was resolved with a guilty plea, the facts in the record are not fully developed. However, the trial court, in addressing Defendant at the sentencing hearing, detailed the following facts:

> The facts of this case, according to the Pre-Sentence Investigation Report on August 12, 2019, state that you were summoned by your granddaughter, Mr. McQuill[i]n's ex-wife, to come to her house, (inaudible) an argument between her and ex-husband, Mr. McQuill[i]n, who was attempting to take physical custody of their child. Mr. McQuill[i]n was asked by his ex-wife to babysit the child the following day, but he could not, preferring to take the child that night. You grabbed a gun and drove to your granddaughter's house. You pulled up along Mr. McQuill[i]n's truck, exited your vehicle with a gun in hand, and ordered Mr. McQuill[i]n to leave the property. Mr. McQuill[i]n agreed to leave. Mr. McQuill[i]n turned to walk away, at which point you approached him, struck Mr. McQuill[i]n in the back of the head with a gun, causing it to fire, and a bullet enter[ed] his head from behind the right ear. Mr. McQuill[i]n fell dead.

## ERRORS PATENT

In accordance with La.Code Crim. P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we conclude that there are no errors patent.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

Defendant appeals his sentence on two grounds. First, he asserts the trial court abused its discretion in imposing the maximum sentence prescribed by law. Second, he claims his sentence is constitutionally excessive. Defendant's two assignments of error are closely intertwined, so we will address the two together.

In his brief to this court, Defendant claims the trial court's compliance with La.Code Crim.P. art. 894.1 was inadequate to support the maximum sentence he received. Specifically, Defendant argues that, had the trial court properly considered the factors in La.Code Crim.P. art. 894.1(A), it would have found a sentence of probation or suspension of sentence was warranted. Further, Defendant claims that had the trial court properly considered the mitigating factors, pursuant to La.Code Crim.P. art. 894.1(B), it would have found a lesser term of imprisonment more appropriate. Defendant argues his maximum sentence makes no measurable contribution to the acceptable goals of punishment and is "nothing more than the purposeless and needless imposition of pain and suffering on an elderly, remorseful defendant who pled guilty." Defendant further asserts his sentence is excessive, and a lesser sentence tailored to him would not deprecate the seriousness of his crime.

The State, in contrast, contends the trial court did not abuse its discretion and sentenced Defendant within the statutory limits. The State further argues that the Defendant's sentence is not disproportionate to the severity of the crime, and a lesser sentence would deprecate the seriousness of the crime.

At Defendant's sentencing hearing, and having taken into consideration the eighteen victim impact statements presented by the victim's family, testimony from business associates and friends, as well as Defendant's character witnesses, along with the Pre-Sentence Investigative Report, the trial court provided the following reasons for imposing the maximum sentence:

> As previously stated, the defendant was originally arrested by the Natchitoches Parish Sheriff's [O]ffice for the crime of second-degree murder. An offense that carries a mandatory sentence of life imprisonment. In my opinion, the facts, as I know them, could clearly support a charge of manslaughter, an offense that carries a maximum sentence of 40 years imprisonment. To your benefit, Mr. Vascocu, the

3

grand jury indicted you with negligent homicide, an offense that carries the maximum of five (5) years imprisonment. . . . I have reviewed the record[,] defense counsel's sentencing memorandum, victim impact statements, and heard the testimony of Mr. and Mrs. McQuill[i]n, as well as Mr. Vascocu's character witnesses, Mr. Calvert, Mr. Guin, Mr. Fredieu, and the others.

. . . .

In determining a sentence, the Court has . . . reviewed and considered the sentencing guidelines, and the sentencing factors [as] set forth in the Louisiana Code of Criminal Procedure Article 894.1. Those guidelines mandate that when a defendant has been convicted of a felony the Court should impose a sentence of imprisonment. Here, this case calls for a sentence of imprisonment. This Court, as all criminal courts, must steadfastly balance compassion, justice, and public safety in its criminal sentencing. This Court has taken notice and has weighed in its decision today, the defendant's social history, his lack of any prior criminal record, and that this is his first and hopefully last felony offense. . . . This Court has also taken note that a dangerous weapon was used in this crime. A .22 caliber pistol, and that the offense resulted in a very significant and permanent injury. And significant economic loss to the victim or his family, most specifically the victim's daughter and parents. Mr. Vascocu, whatever sentence I give you today, it does not ignore the grave serious nature of your crime . . . the shooting death of Mr. McQuill[i]n at point-blank range at the head. What is so heartbreaking to this Court is that an innocent child was present the night of Mr. McQuill[i]n's death . . . his own daughter. According to all accounts, you consciously brought a gun with you. Mr. McQuill[i]n was unarmed. And Mr. McQuill[i]n was walking away from you.

Additionally, the trial court specifically found that two of the three provisions of La.Code Crim.P. art. 894.1(A) applied to Defendant. The trial court found that Defendant needed correctional treatment or a custodial environment which could be provided most effectively by commitment to an institution pursuant to La.Code Crim.P. art. 894.1(A)(2). The trial court further found that because the victim, a young twenty-year-old man and father, had been killed by Defendant, a lesser sentence would deprecate the seriousness of Defendant's offense pursuant to La.Code Crim. P. art. 894.1(A)(3). Finally, the trial court found imprisonment was warranted in this case and sentenced Defendant to five years at hard labor, along with a five thousand dollar fine.

A careful review of the record shows that the trial court did in fact properly consider and articulate the criteria/factors set forth in La.Code Crim.P. art. 894.1. The purpose of La.Code Crim.P. art. 894.1 is to provide for the trial court's articulation of a factual basis for a sentence, not a rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712, pp. 5-6 (La.App. 2 Cir. 1/13/21), 310 So.3d 307, 311. "While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983) (citing *State v. Ray*, 423 So.2d 1116 (La.1982); *State v. Keeney*, 422 So.2d 1144 (La.1982); *State v. Duncan*, 420 So.2d 1105 (La.1982)). Importantly, the trial court should consider the defendant's personal history, including his age, marital status, health, and employment record; his criminal record; the seriousness of the offense; and "the likelihood of rehabilitation through correctional services other than confinement." *State v. Jones*, 398 So.2d 1049, 1051-52 (La.1981); *see also State v. Thompson*, 50,392 (La.App. 2 Cir. 2/24/16), 189 So.3d 1139, *writ denied*, 16-535 (La. 3/31/17), 217 So.3d 358. "There is no requirement that specific matters be given any particular weight at sentencing." *State v. Brown*, 51,352, p. 22 (La.App. 2 Cir. 5/2/17), 223 So.3d 88, 103, *writ denied*, 17-1154 (La. 5/11/18), 241 So.3d 1013 (citations omitted).

Additionally, appellate courts must determine whether the sentence imposed is constitutionally excessive:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43 (citing *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99), 746 So.2d 124, *writ denied*, 00-165 (La. 6/30/00), 765 So.2d 1067).

. . . .

"[Louisiana] Const. art I, § 20, guarantees that, '[n]o law shall subject any person to cruel or unusual punishment.'" *Barling*, 779 So.2d at 1042-43. "To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering." *Id.* at 1042 (citing *State v. Campbell*, 404 So.2d 1205 (La.1981)).

The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *Barling*, 779 So.2d at 1042-43 (citing *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996)). In reviewing the defendant's sentence, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. "[T]he appellate court must be mindful that the trial court is in the best position to consider the aggravating and mitigating circumstances of each case. . . ." *State v. Williams*, 02-707 (La.App. 3 Cir. 3/5/03), 839 So.2d 1095, 1100 (citing *Cook*, 674 So.2d 957).

*State v. Rexrode*, 17-457, pp. 3-4 (La.App. 3 Cir. 11/15/17), 232 So.3d 1251, 1253-54 (alterations in original). "Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78.

Looking first to the nature of the crime, Defendant was charged with negligent homicide, which is defined as "[t]he killing of a human being by criminal negligence." La.R.S. 14:32(A)(1). Negligent homicide is punishable by imprisonment with or without hard labor for not more than five years and/or a fine of not more than five thousand dollars. La.R.S. 14:32(C)(1). Here, Defendant received the maximum sentence and the maximum fine.

6

We find that the trial court thoroughly detailed the factual circumstances leading up to the crime at the sentencing hearing. Although negligent homicide is not defined as a crime of violence, under La.R.S. 14:2(B) the particular set of facts in this case, as found and stated by the trial court, are violent in nature. The trial court further noted that the victim, Mr. McQuillin, was unarmed and had his back to Defendant when Defendant hit Mr. McQuillin in the back of the head with a loaded firearm, causing the firearm to discharge a bullet into Mr. McQuillin's head. The PSI reflects that following the shooting, Defendant instructed his granddaughter to call 911, remained at the scene waiting for authorities to arrive, disarmed himself, and voluntarily confessed to the crime. Further, and as found and stated by the trial court, the facts of this case are such that, had these and other mitigating circumstances not been shown, Defendant might have been charged by the grand jury with a more serious offense, either second-degree murder, for which he was originally arrested and charged, or manslaughter.

As to the nature and background of the offender, Defendant was described as a sixty-eight-year-old first offender with no prior arrests at the time of sentencing. The PSI indicated he was divorced and a father, grandfather, and great grandfather. According to his doctor, Defendant suffered from numerous health conditions such as hypertension, hyperlipidemia, and coronary artery disease which require close medical monitoring and strict compliance with medication and diet. After dropping out of high school, Defendant maintained steady employment and eventually owned a paint and drywall business which operated for thirty-five years, with several members of the community testifying as to his good character and his personal history at the sentencing hearing.

7

Regarding the imposition of the maximum sentence for negligent homicide, appellate courts have upheld a wide range of sentences from three to five years, and sometimes with suspended sentences, under varying factual circumstances. The imposition of maximum sentences was generally discussed in *State v. Webre,* 09-351, pp. 3-4 (La.App. 3 Cir. 11/4/09), 21 So.3d 1154, 1156-57 (alterations in original), as follows:

> In *State v. Burnaman,* 03-1647, p. 5 (La.App. 3 Cir. 5/12/04), 872 So.2d 637, 641, this court considered the appropriateness of the imposition of maximum sentences, explaining:
>
>> [M]aximum sentences are usually reserved for the most egregious and blameworthy of offenders. *State v. LeBlanc,* 578 So.2d 1036 (La.App. 3 Cir.1991), *writ denied,* 620 So.2d 833 (La.1993). In reviewing the imposition of a maximum sentence, the First Circuit has held:
>>
>> This Court has stated that maximum sentences permitted under statute may be imposed only for the most serious offenses and the worst offenders, *State v. Easley,* 432 So.2d 910, 914 (La.App. 1 Cir.1983), or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. *See State v. Chaney,* 537 So.2d 313, 318 (La.App. 1 Cir.1988), *writ denied,* 541 So.2d 870 (La.1989). A trial court's reasons for imposing sentence, as required by La.Code Crim. P. art. 894.1, are an important aid to this court when reviewing a sentence alleged to be excessive. *State v. McKnight,* 98-1790 at p. 25, 739 So.2d [343] at 359 [ (La.App. 1 Cir.1999) ].
>
> *State v. Runyon,* [05-36, 05-104, pp. 22-23 (La.App. 3 Cir. 11/2/05),] 916 So.2d [407,] 423-24[, *writ denied,* 06-1348 (La.9/1/06), 936 So.2d 207].

See also *State v. Runyon,* 06-823, p. 12 (La.App. 3 Cir. 12/6/06), 944 So.2d 820, 830, *writ denied,* 07-49 (La.9/21/07), 964 So.2d 330.

8

The defendant in *Webre* received the maximum sentence for negligent homicide which this court affirmed on appeal. *Id*. This court noted the defendant had a criminal history, including numerous arrests and prior driving while intoxicated (DWI) and hit-and-run convictions, and showed a lack of remorse. *Id*.

In *State v. Parker*, 42,947 (La.App. 2 Cir. 1/30/08), 974 So.2d 844, the second circuit upheld a five-year sentence with a $3,500.00 fine for negligent homicide, although half of the sentence was suspended. The second circuit found the defendant received a significant benefit from the jury returning a responsive verdict when she was charged with vehicular homicide, a benefit which reduced her sentencing exposure. *Id*. at 848. The court noted that defendant's "actual incarceration would only amount to one-half of the maximum sentence." *Id*. (footnote omitted).

The second circuit also upheld a maximum sentence for negligent homicide involving a shooting in *State v. Pope*, 47,486, 47,487 (La.App. 2 Cir. 9/26/12), 106 So.3d 600. In *Pope*, the defendant was charged with second degree murder, which was later amended to manslaughter, before he pled guilty to negligent homicide and felony theft. *Id*. The defendant in *Pope* shot his estranged wife during an argument that was witnessed by their twenty-one-year-old daughter and eighteen-year-old son. *Id*. While out on bond, he committed felony theft, which the court considered an aggravating circumstance. *Id*.

In *State v. Ducote*, 19-263 (La.App. 3 Cir. 12/18/19), 286 So.3d 604, *writ denied*, 20-134 (La. 5/7/20), 296 So.3d 611, this court found the maximum five-year sentence was not excessive considering the circumstances of the case. The defendant pointed an AR-15 at his friend, the victim, without checking to see if the gun was loaded or if the safety was engaged, and deliberately pulled the trigger. *Id*. The defendant lied to law enforcement and claimed the gun fell out of his truck and accidentally discharged. *Id*. In affirming his sentence, this court reasoned that "[t]he

9

deliberate and conscious action of pulling the trigger substantiates imposing the maximum sentence[,]" and "his clear disregard for firearm safety shows him to be the worst kind of offender in the context of negligent homicide." *Id.* at 608-09.

In *State v. Hughes*, 03-420 (La.App. 3 Cir. 12/31/03), 865 So.2d 853, *writ denied*, 04-663 (La. 9/24/04), 882 So.2d 1165, this court found a five-year sentence for negligent homicide was not excessive for a first-time felony offender with four children. The defendant attempted to commit suicide by driving into a head-on accident at high speed but instead killed the driver of the other car. *Id.* This court found the trial court did not abuse its discretion in sentencing the defendant to the maximum sentence based on her wanton and reckless disregard for the lives and safety of others. *Id.*

In this case, Defendant argues that the maximum sentence is not warranted, because there is an absence of exceptional circumstances. Defendant argues that he is not the worst type of offender based on his lack of criminal record, his social history, and his actions after committing the crime, including confessing to the crime, and pleading guilty as charged without a sentencing recommendation or sentencing cap. Defendant further argues that he did not commit another crime or violate any of the trial court's conditions while out on bond.

Defendant further cites other accidental shooting cases, such as *State v. Asberry*, 451 So.2d 1353 (La.App. 1 Cir. 1984), and *State v. McFerson*, 583 So.2d 516 (La.App. 3 Cir.), *writ denied*, 588 So.2d 113 (La.1991). In those cases, the Defendant argues that those defendants received lesser sentences than the one imposed in this case. Defendant claims the facts in the *Asberry* and *McFerson* cases are more synonymous with his case, and he further argues that cases where the maximum sentence was upheld involve egregious facts and aggravating circumstances.

In *Asberry*, 451 So.2d 1353, the first circuit upheld a three-year sentence for a defendant who shot his nephew, turned himself in, and subsequently pled guilty to negligent homicide. The trial court, in sentencing the defendant, noted in mitigation that he pled guilty as charged, had no previous convictions, voluntarily surrendered to the police, and expressed remorse for his actions. *Id.* at 1354. In *McFerson*, 583 So.2d 516, the defendant brought a firearm to a nightclub and, while attempting to put the firearm in the front of his pants, was bumped by [a third party] which caused the firearm to discharge. *Id.* The defendant was convicted of negligent homicide and sentenced to three years at hard labor. *Id.* In that case, this court noted the defendant was nineteen years old, an Army officer, and a first offender in affirming his sentence. *Id.*

Even evaluating sentences given to defendants for similar crimes, our jurisprudence acknowledges that "[t]he trial judge is given great discretion in the imposition of sentences within statutory limits, and the sentence should not be set aside in the absence of abuse of his discretion." *State v. Bradley,* 414 So.2d 724, 725 (La.1982) (citations omitted), and the relevant question is "'whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" *State v. Cook,* 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959 (per curium) (quoting *State v. Humphrey,* 445 So.2d 1155, 1165 (La.1984)), *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996).

A review of the foregoing jurisprudence shows that appellate courts have affirmed a wide range of sentences for negligent homicide convictions. Although Defendant contends the trial court failed to comply with La.Code Crim. P. art. 894.1, this court finds to the contrary. Further, this court finds that the sentence imposed does not shock the sense of justice, nor is it disproportionate to the severity of the offense and the specific violent facts of this case.

11

After carefully reviewing the record, this court finds that the trial court did not abuse its discretion in sentencing Defendant to the maximum sentence. Therefore, we affirm Defendant's sentence and find these assignments of error are without merit.

## DECREE

For the foregoing reasons, and in view of the record before us, the trial court's sentence imposed upon Defendant, Robert Eugene Vascocu, pursuant to his voluntary guilty plea to negligent homicide, is affirmed.

**AFFIRMED.**