NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**KA 23-222**

**STATE OF LOUISIANA**

**VERSUS**

**STACY LYNN THARPE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 95815
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GUY E. BRADBERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

**Terry W. Lambright**
**District Attorney**
**William R. Thornton**
**Assistant District Attorney**
**Thirtieth Judicial District Court**
**P.O. Box 1188**
**Leesville, LA 71496**
**(337) 239-2008**
**COUNSEL FOR:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**600 Jefferson Street, Suite #903**
**Lafayette, LA 70501**
**(337) 366-8944**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Stacy Lynn Tharpe**

**BRADBERRY, Judge.**

On September 17, 2020, the State charged Defendant, Stacy Lynn Tharpe, by bill of information with three counts of principal to second degree cruelty to a juvenile, all in violation of La.R.S. 14:93.2.3(A)(1) and La.R.S. 14:24. She was charged along with her two co-defendants, Dakota Wayne Singletary and Allen Clayton Fulks. On February 2, 2021, Defendant pled guilty to count three of the bill of information. Consequently, the State dismissed counts one and two.

Since Defendant agreed to testify truthfully at trial against any co-defendant, her sentencing was deferred until all her co-defendants' cases had been resolved. Per the plea deal, the State made no sentence recommendation to the trial court. Defendant acknowledged that the possible maximum sentence she could be given was forty years at hard labor. On December 20, 2022, the court sentenced Defendant to ten years at hard labor with credit for time served. During the sentencing hearing, the court did not state the facts of the case but instead indicated that the facts were the same as the Fulks matter, and it therefore utilized those facts to sentence Defendant.

Defendant's counsel objected to the sentence. A motion for reconsideration of sentence was filed on January 11, 2023, and was denied, without written reasons, on January 20, 2023. On January 26, 2023, Defendant filed a motion for appeal and designation of record. It was granted by the trial court on January 27, 2023. The instant appeal was filed on April 18, 2023. It contains one assignment of error: The trial court abused its discretion by sentencing Defendant to a ten-year sentence based on the facts of this case and her role as a principal to second degree cruelty to a juvenile.

For the following reasons, we affirm Defendant's sentence.

# FACTS

The facts from which Defendant's sentence was tailored were taken from the record of sentencing of her co-defendant, Allen Fulks. The trial court recited the facts for the record in Fulks' case:

> The facts of this case came to light following an automobile accident on July the 6th, 2020, involving this defendant, Mr. Fulks, and Dakota Wayne Singletary.
>
> Sometime in mid-February 2020, Allen Fulks and his girlfriend, Stacy Tharpe, took in a 7-year-old female child at the request of the child's mother as she had fallen on hard times and needed to get on her feet and to secure a residence for herself and the minor child. . . . After taking the child into the home, Ms. Tharpe and Mr. Fulks spoke with Officer [Robert] Green of the Rosepine Police Department and advised him that they'd be working with the child's mother and they were making arrangements to get the child into Rosepine Elementary School. Officer Green was familiar with Ms. Tharpe as she had worked at the Dollar General Store in Rosepine. Officer Green and his chief visited the couple's home and spoke with the couple and the minor child. They advised that they needed school supplies, clothing and other things for the child. In turn, Officer Green, community members and local churches came together to raise items for the family which included money, items for their family and it also included one of the churches who bought this family a vehicle.
>
> From time to time, Officer Green and other members of the police department would stop by the residence to check on the child and to see how things were going. This entire community was interested and concerned about the welfare of this seven-year-old child.
>
> On June 20th of 2020, a report of possible abuse of the child was made to Officer Dylan Bergeron of Rosepine Police Department and the informant was provided -- was provided the contact information for the Department of Children and Family Services. This information was conveyed to Officer Green.
>
> On July the 6th of 2020, at 7:49 p.m., Officer Green drove to the residence to make contact with the minor child. He was met outside on the porch by Allen Fulks and Dakota Singletary. Dakota Singletary was a friend of Allen Fulks and Stacy Tharpe and would stay at their home on occasion for unspecified periods of time. Allen Fulks told Officer Green that the minor child was with his mother and father on vacation. Officer Green explained that he would like to see her upon her return from vacation.

Officer Green soon learned of an automobile accident involving Allen Fulks and Dakota Singletary and he went to assist at 9:20 p.m. Vernon Parish Sheriff Deputy Jacob Durrett was also at the scene and both Officer Green and Deputy Durrett assisted Louisiana State Police Trooper Peter Smith. Both Allen Fulks and Dakota Singletary were transported to Beauregard Hospital by ambulance. Stacy Tharpe was noticed at the scene in another vehicle. While working on the scene, law enforcement officers were discussing the fact that the vehicle had a child seat in it and how they were glad that there wasn't a child in the vehicle. The conversation then evolved into the fact that there is a child staying at the home who hasn't been seen in a while, which was the minor child who is the victim in this case.

While waiting on the wrecker, Allen Fulks' parents arrived at the scene. Officer Green asked the parents how the minor child was doing and told them that Allen Fulks had told him she was on vacation with them. The parents looked puzzled and advised that the minor child was not with them. The parents left the scene.

Officer Green subsequently left the scene of the accident and made contact with the individual who reported the possible abuse allegations and another party regarding the whereabouts of the minor child. They both advised that they were told that the child was with a Tristen Maricle.

Shortly thereafter, Stacy Tharpe arrived back at the scene to attempt to retrieve items from the wrecked vehicle. She was informed that only the registered owner of the vehicle would be able to retrieve items. It was noticed that she did not have a minor child matching the child's age in the vehicle. After Stacy Tharpe left the scene, Louisiana State Police Trooper Peter Smith contacted Officer Green and informed him of this.

Officer Green initiated a traffic stop out of concern as to the whereabouts of the minor child. Stacy Tharpe informed Officer Green that the child was with Allen Fulks' parents. Officer Green informed her that he knew they did not have her. At that time, Stacy Tharpe began to cry and ultimately took Officer Green to the child.

The minor child was located hiding in a bedroom of the home and was in severe pain and had been severely physically abused. An ambulance transported the child to Byrd Emergency Room for medical attention.

The parties, Stacy Tharpe, Allen Fulks and Dakota Singletary, all voluntarily answered questions during several interviews with Detective David Vance at the Vernon Parish Sheriff's Office.

Through several interviews with Stacy Tharpe, Allen Fulks and Dakota Singletary conducted by David Vance of the Vernon Parish Sheriff's Office and an interview with the minor child conducted by Brittany Evans of the Children's Advocacy Center, it was learned that between May the 1st of 2020, and July the 6th, 2020, two months . . . the child suffered ongoing abuse wherein Stacy Tharpe, Allen Fulks and Dakota Singletary each participated in different ways, but were all principals to each other's acts. Often times they would watch one another physically abuse the child and high five one another in celebration -- high five one another in celebration.

The seven-year-old child was repeatedly struck with open and closed fists in the back of the head and mouth, thrown up into the air and onto the ground, kicked in the stomach, lashed with a belt as her head was pressed into a pillow, slapped, popped in the mouth, held by her shoulders, burned with cigarettes, punched and kneed in the vagina, choked until she fell unconscious and choked with a belt. She was forced to drink hot sauce concoctions. Her head was pushed into a sheetrock wall. She was denied food and drink, and on some occasions, denied food for three days. She was forced to take ice baths with her hands and feet zip tied behind her back. Her hair was cut off. She was lifted up by her hair and held in the air until her roots separated from her scalp causing a bald spot on the top of the head. While being choked with a belt, as the belt was being pulled above her head, she was told "you're going to die." She was repeatedly forced to hide under a bunk bed, inside an air vent for long periods of time to prevent the public or any company from seeing the severe bruises on her body. When made to hide in the air vent, she was made to wear a diaper and was left there so long she urinated and defecated on herself. She was forced to hide underneath the bed during the birthday party for Ms. Tharpe's four-year-old child. She was left alone, under the bed, while the family went out to eat Mexican food.

These parties were placed under arrest. These parties neglected the child and failed to seek medical treatment. As a result of the ongoing abuse, the minor child suffered protraction [sic], disfigurement, extreme bruising, unconsciousness, severe bodily injury, pain and repeated injuries.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent, but find the court minutes of sentencing require correction.

4

The court minutes state, "The Court ordered the defendant to received [sic] drug treatment while incarcerated." The sentencing transcript reflects that the judge stated, "I'm gonna [sic] recommend to the Department of Corrections that she receive any drug treatment that may be available or substance abuse treatment that may be available, as well as any mental health treatment that may be available through the Department of Corrections." "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, this court orders the trial court to correct the sentencing minutes to accurately reflect the trial court's statement regarding a recommendation for available drug, substance abuse, and mental health treatment.

## ASSIGNMENT OF ERROR

Defendant's sole assignment of error asserts that, based on the facts of this case and her role as a principal to second degree cruelty to a juvenile, the trial court abused its discretion by imposing an excessive sentence of ten years at hard labor.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v.*

*Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Here, the penalty for Defendant's offense is imprisonment at hard labor for not more than forty years. La.R.S. 14:93.2.3(C). Defendant's ten-year sentence therefore lies at the lower end.

Since the question is whether the trial court abused its discretion and not whether another sentence would be more appropriate, we find, after considering the nature of the crime, the nature and background of Defendant, and the sentences imposed in similar cases, that Defendant's sentence of ten years at hard labor is not

constitutionally excessive. The trial imposed this sentence because Defendant had accepted responsibility for her actions and had shown remorse for the victim. Defendant also testified truthfully against Allen Fulks. Nevertheless, "this defendant is just as responsible for the injuries and torture of this seven-year-old-child," said the trial court. "She also took advantage of the Rosepine community by using donations to further her drug habit. . . . A lesser sentence would deprecate the seriousness of this defendant's offense."

*Nature of the Crime*

While under the care of Defendant and her two co-defendants, the seven-year-old victim, over a two-month period, endured beatings, torture, and neglect, and suffered severe bodily injury, repeated injuries, and lasting mental trauma. However, the evidence shows that she did not inflict any of the injuries upon the child. The child, in fact, was pleading to the police that Defendant had nothing to do with harming her.

*Nature and Background of the Defendant*

Defendant was a first-felony offender. She was thirty-two years old, unmarried, with two children; she was in good health but suffered from depression, anxiety, asthma, and high blood pressure; she had a history of medical procedures and of drug and alcohol abuse, including the use of methamphetamines. To finance her drug habit, she took advantage of the Rosepine community by using the donations it had given her, meaning to benefit the victim. She had not had any alcohol or drug treatment. She claimed to have earned a GED, and she was working as a clerk at Dollar General at the time of her arrest. Defendant had accepted responsibility for her actions and had shown remorse for the victim. Lastly, Defendant testified truthfully against Allen Fulks.

7

*Sentences Imposed in Similar Cases*

Defendant's brief cites *State v. Day*, 15-564 (La.App. 3 Cir. 12/23/15), 182 So.3d 1128. The defendant in *Day* first received thirty years for directly abusing her stepson through emotional cruelty and criminal physical neglect. The nine-year-old victim was found by his aunt. She found him shivering on the floor of a room furnished with only a thin mattress and a Bible. He was starving. He weighed only thirty-eight pounds. In the middle of his back was a large circular burn with a diameter of seven to eight inches. He had ligature marks on the fronts of both ankles, cuts on his head and inside his mouth and ear, bruises on his eye, lips, stomach, arms, and legs, and he had "lunago," indicating starvation. *Id.* at 1131. The abuse had occurred over many months. *Id.* This court, however, vacated the thirty-year sentence and remanded the matter for resentencing, noting the defendant was a first felony offender without any prior history of violence and demonstrated a capacity for rehabilitation. On remand, a ten-year sentence was imposed. The defendant again appealed; however, the sentence was affirmed.

A fifteen-year sentence was imposed in *State v. Conway*, 50,596 (La.App. 2 Cir. 5/18/16), 196 So.3d 635, on a twenty-five-year-old first offender for her mistreatment of her two-year-old daughter. The child suffered second and third degree burns to both legs, a cut over the left eye, and other injuries to the liver, face, and head. It must be noted, however, for pleading guilty to second degree cruelty to juveniles, a sentencing cap of twenty years at hard labor was agreed upon, and the defendant's remaining charge of second degree battery was dismissed. Still, the trial court chose not to impose the twenty years within its discretion but only fifteen years. Despite her plea bargain, the defendant appealed her fifteen-year sentence, and the second circuit agreed to review the matter because she had not been specifically

8

informed that by pleading she was waiving her right to appeal her sentence as excessive. Nevertheless, after considering the facts of the case and the benefit she had received from the plea bargain, the second circuit affirmed the sentence. *Id.*

In *State v. J.S.,* 10-391 (La.App. 3 Cir. 11/3/10) (unpublished opinion), a first-offender, female defendant mistreated a child under the age of seventeen, resulting in a fracture of the child's cranium. She pled guilty to two counts of second degree cruelty to a juvenile, and three counts of the same offense were dismissed. The defendant was sentenced to serve thirty years at hard labor on each count, with eighteen years of each sentence suspended. The sentences were ordered to run concurrently. Additionally, she was placed on five-year probation for each count, to run consecutively at the end of her incarceration. This court affirmed the sentences, noting that the defendant was a first offender and had benefitted from a plea bargain.

*Summary of the Arguments from Defendant and the State*

Defendant argues her ten-year sentence is excessive because the court erred in finding her just as responsible for the injuries and torture of E.J.[1] as her two co-defendants, Fulks and Singletary. Additionally, the court erred in finding she did not act under strong provocation by the victim or others. In support, Defendant addresses several mitigating factors she believes the court did not adequately consider.

Firstly, Defendant asserts she did not act as E.J.'s torturer and in fact tried to shield the victim from harm. Defendant notes E.J.'s response when asked during her forensic examination if Defendant had hurt her. "No," said E.J., "She tried to

---

[1]Pursuant to La.R.S. 46:1844(W), the victim's initials are used to protect her identity.

help me." E.J. also stated that once when Fulks was forcing her into an ice bath, Defendant tried to save her but was pushed back into the bedroom. When E.J. was asked if Defendant had done anything to her that she did not want, she answered no. Also, Defendant would sometimes get between the victim and Fulks and would tell him to calm down.

Defendant's indirect role in the abuse of E.J., however, was acknowledged by the trial court. "Further, the evidence shows that she did not inflict any of the injuries upon the child," said the court. "In fact, upon the rescue of the child, the child was pleading with the police that this defendant had nothing to do with harming the child."

Secondly, Defendant asserts she was repeatedly threatened by Singletary and Fulks. Her relationship with Fulks was abusive and could have potentially threatened the safety of her own two children. For example, once while Fulks and Singletary were abusing E.J., Defendant came into the room; when asked if he had made a statement to Defendant upon seeing her, Fulks said he was not sure, but if he did, he probably said, "Carry your ass or you are next."

Of her claim that she did not seek outside help because she feared her two co-defendants would have violently retaliated against her or her children, the State responds in its brief that there is no evidence that her two co-defendants threatened her or her children in any manner. The State argues that Defendant was instrumental to the repeated abuse of the child. When left alone, she never removed the child from the abusive setting, either to seek help from the police or to seek medical attention, and she repeatedly failed to assist law enforcement, including lying about the whereabouts of the victim.

"It should be noted also," said the court, "that there were two or three dogs in this home and it's sad to say that these dogs were treated better than this seven-year-

old child." The trial court, therefore, was aware of the harm E.J. could have avoided if Defendant had removed her from the residence, and her failure to do so contributed to its assessment of her culpability.

Lastly, Defendant argues that despite pleading guilty to count three of the bill of information and expressing remorse for her role in the abuse of the victim, she still received ten years, while Allen Fulks–who did not plead guilty nor express remorse and who directly tortured E.J. – received a fifteen year sentence for count three, the same count to which Defendant pled. The State responds that even though Defendant was convicted as a principal, her ten-year sentence is still appropriate and not excessive. By pleading guilty, Defendant was facing a possible sentence of forty years. If she had not pled and instead had gone to trial, she would have faced three counts of second degree cruelty to a juvenile and would have faced a sentence of up to one-hundred and twenty years. This court agrees with the State's argument.

As noted above, the trial court found that a lesser sentence would have deprecated the seriousness of Defendant's offense. Furthermore, it is true Allen Fulks received fifteen years for count three, but he also received fifteen years for count one and fifteen years for count two, and his three sentences (totaling forty-five years) were set to run consecutively. Given the context, the apparent similarity of Allen Fulks's fifteen-year sentence and Defendant's ten-year sentence disappears.

## CONCLUSION

After reviewing the facts of the instant appeal and the sentences imposed in similar cases, we find Defendant's sentence is not constitutionally excessive. The trial court adequately considered the facts and circumstances of the case before it found Defendant equally responsible for the torture of the victim. The actions and inactions of Defendant indissolubly interlinked her to the suffering of the victim who

11

endured many weeks of torture and neglect by Defendant's two co-defendants, Dakota Singletary and Allen Fulks. Because of her decision to plead guilty and to testify against Allen Fulks, Defendant received a far more lenient sentence than the one she likely would have received if she had gone to trial, and there is little to suggest her diminished sentence exhibits an abuse of discretion by the trial court.

This court affirms Defendant's sentence. Additionally, this court orders the trial court to correct the court minutes of sentencing to accurately reflect the trial court's statement at sentencing regarding its recommendation for available drug, substance abuse, and mental health treatment.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.